Paul MULLEN, Plaintiff,

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.**

No. CIV.A. 97–5341(JWB).

United States District Court, D. New Jersey.

Dec. 17, 1999.

Krenkel Monaghan, by David A. Krenkel, Ocean Township, NJ, for Plaintiff.

Hugh H. Welsh, by Charles A. Karcher, Newark, NJ, for Defendant.

### OPINION

BISSELL, District Judge.

This matter comes before the Court on defendant Port Authority of New York and New Jersey's ("Port Authority") motion for summary judgment. On October 30, 1997, plaintiff Paul Mullen ("Mullen") filed a four-count Complaint in this Court alleging that his termination by the Port Authority violated the U.S. Constitution, the New Jersey Constitution, and 42 U.S.C. § 1983. Presently before the Court is the Port Authority's motion for summary judgment.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### FACTS

The facts of this case are largely undisputed.

Paul Mullen was hired by the Port Authority in 1980 as a police officer. (Compl., ¶ 1).

On October 4, 1991, while off duty, Mullen was arrested and charged with aggravated sexual assault, sexual assault,

aggravated criminal sexual contact, and endangering the welfare of a child. (*Id.,* ¶ 3). On that same day, the Port Authority suspended Mullen without pay. (Arbitrator's Opinion ("Arb.Op.") at 2).

On October 5, 1991, the *Asbury Park Press* printed an article about Mullen's arrest. The article identified Mullen as a Port Authority police officer. (Compl., ¶ 4).

On September 21, 1992, the Port Authority served Mullen with a disciplinary charge and specification stating that:

*Charge 1*

Conduct seriously prejudicial to the Port Authority

*Specification 1*

On October 4, 1991, while off duty, you were arrested and on November 18, 1991 you were indicted by a Monmouth County Grand Jury for the commission of sexual assault, aggravated sexual assault, aggravated criminal sexual contact upon minor children; and of sexual activity which endangered the welfare of a child.

Each element, as well as the totality of such conduct, represents a violation of General Rules and Regulations of all Port Authority Employees, Chapter 4, Paragraph 1, which reads: "No employee shall commit any act or neglect any duty which in any way is prejudicial to good order, discipline, or efficiency, or reflects unfavorably upon the good name or reputation of the Port Authority or those of the general public, whether or not such act or neglect is specifically mentioned in these rules."

(*Id.,* ¶ 5).

On April 14, 1993, before the Honorable Theodore J. LeBrecque, Superior Court of New Jersey, Mullen pled guilty to the third-degree crime of endangering the welfare of a child.[1] (*Id.,* ¶ 6). On My 21, 1993, Mullen was sentenced to five years

probation, conditioned on continued psychological counseling. (Arb. Op. at 3).

On July 19, 1993, the Port Authority trial board conducted a hearing on the pending disciplinary charges against Mullen and on August 19, 1993, the board recommended Mullen's termination. (*Id.*) (*See* Krenkel Cert., Exh. 5). This recommendation was forwarded to a reviewing officer for approval in accordance with Port Authority Instruction 20–1.10. The reviewing officer agreed with the trial board's recommendation on October 5, 1993, and the recommendation was then sent to the Operations Committee for final review. The Operations Committee approved the recommendation on October 28, 1993. On November 1, 1993, the Port Authority Labor Relations Division notified Mullen that he had been terminated and that the effective date of that termination was October 7, 1991.

Following Mullen's termination by the Port Authority, his case was referred to arbitration pursuant to a collective bargaining agreement between the Port Authority and the Port Authority Police Benevolent Association Inc., the union representing Mullen. (*See* Krenkel Cert., Exh. 6). Section XXVIII of the agreement addresses the disciplining of police officers, and paragraph 2(h)(iii) provides that:

The determination of the Hearing Officer as to whether the charge(s) has (have) been sustained and the disciplinary action to be taken shall be final and binding upon the Port Authority, the Association and the Police Officer charged unless referred to arbitration as provided in Appendix G of this Memorandum of Agreement for a de novo hearing.

(*Id.* at 56).

On June 21, 1995, a full hearing was held before Arbitrator Alan R. Viani. At the conclusion of that hearing, the arbitra-

---

1. Mullen pled guilty to having engaged in sexual conduct with his stepdaughter from 1982 to 1991, when the stepdaughter was between five and fifteen years of age.

tor found that the Port Authority had just cause to terminate Mullen's employment. On November 2, 1995, an arbitration award was entered and Mullen's termination was upheld.[2] (Compl., ¶ 8).

The instant Complaint was filed on October 30, 1997.

## ANALYSIS

### I. Summary Judgment Standard

Federal Rules of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (*en banc*), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there exists no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that, in applying the criteria for granting summary judgment to a defendant:

> [t]he judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (*Id.*)

In order to survive a motion for summary judgment, the nonmoving party must present "more than a mere scintilla of evidence" in his favor. He "cannot simply reallege factually unsupported allegations contained in his pleadings." (*Id.* at 249, 325, 106 S.Ct. 2505; *see also Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 72 (3d Cir.1990)). If, for example, the nonmovant submits an affidavit to support his opposition to the summary judgment motion, Fed.R.Civ.P. 56(e) requires that such affidavit be based "on personal knowledge," and "show affirmatively that the affiant is competent to testify in all matters stated therein." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 470 (3d Cir. 1989). Only evidence that would be admissible at trial may be used to test a summary judgment motion. Evidence with a deficient foundation must be excluded from consideration. (*Id.*, 891 F.2d at 466; *see also Trap Rock Indus., Inc. v. Local 825*,

2. While Upholding the plaintiff's termination, the arbitrator concluded that the Port Authority had improperly withheld the plaintiff's pay for the duration of his two-year suspension period. Under the terms of the employment agreement, temporary suspension without pay could not exceed two weeks without the Executive Director's approval. Because the Port Authority had failed to proffer any evidence of such approval, the arbitrator held that Mullen's suspension without pay constituted a procedural violation of the contract. Accordingly, the arbitrator directed the Port Authority to pay the plaintiff full back pay and benefits for the period between October 19, 1991 (two weeks from the original suspension date) until July 19 1993 (the Trial Board hearing). (*See* Arb. Op. at 13).

*Int'l Union of Operating Eng'rs,* 982 F.2d 884, 890–92 (3d Cir.1992)).

## II. The Defendant's Motion for Summary Judgment *on the Plaintiff's State Law Claim is Granted.*

■ Plaintiff alleges in Count Two of his Complaint that Chapter Four, paragraph one of the General Rules and Regulations for All Port Authority Employees[3] —the rule under which he was charged— violates the New Jersey Constitution. (*See* Krenkel Cert., Exh. 3). Plaintiff asserts that Chapter Four is both vague and overbroad, thereby restricting otherwise constitutionally protected conduct.

Defendant argues on summary judgment that plaintiff's state law claims must be dismissed because this Court lacks subject matter jurisdiction over them. According to defendant, plaintiff's failure to comply with the strict jurisdictional requirements for suits against the Port Authority strips this Court of its jurisdiction over the claims. The Court agrees.

The Port Authority is a bi-state agency created through a compact between New Jersey and New York with the approval of Congress. *Port Authority of New York v. Ingram,* 232 N.J.Super. 401, 404, 557 A.2d 337 (App.Div.1989). Prior to 1950, the courts "consistently held that the Port Authority, as an agency of the states of New York and New Jersey, enjoyed complete sovereign immunity from suits of any sort in the courts of those states." *Brooklyn Bridge Park Coalition v. Port Authority of New York and New Jersey,* 951 F.Supp. 383, 387 (E.D.N.Y.1997). *See Luciano v. Fanberg Realty Co.,* 102 A.D.2d 94, 475 N.Y.S.2d 854, 856 (1984); *Port Authority of New York v. Weehawken Tp.,* 27 N.J.Super. 328, 333, 99 A.2d 377 (Ch.Div.1953),

*rev'd on other grounds,* 14 N.J. 570, 103 A.2d 603 (1954); *Trippe v. Port of New York Authority,* 14 N.Y.2d 119, 123, 249 N.Y.S.2d 409, 198 N.E.2d 585 (1964). In 1950, however, the legislatures of both states enacted statutes waiving the sovereign immunity heretofore applied to the Port Authority and consenting to suits against it. N.J.S.A. 32:1–157; N.Y. Unconsol. Laws § 6688 *et seq. See Ingram,* 232 N.J.Super. at 404, 557 A.2d 337.

The waiver of sovereign immunity, however, was not unconditional. As one court noted, "[s]ince the Port Authority in the absence of consent, was absolutely immune from suit, the states were free to condition consent on compliance with whatever requirements they deemed appropriate." *Luciano,* 475 N.Y.S.2d at 856. Two such conditions are articulated in N.J.S.A. 32:1–163, which provides that:

> the foregoing consent is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefore shall have accrued, and upon the further condition that in any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced. The provisions of this section shall not apply to claims arising out of provisions of any workmen's compensation law of either State.

Unlike a statute of limitations, the requirements articulated by N.J.S.A. 32:1–163 are jurisdictional in nature.[4] *See Matthews v.*

---

**3.** Paragraph One, Chapter Four states:

No employee shall commit any act or neglect any duty which in any way is prejudicial to good order, discipline, or efficiency, or reflects unfavorably upon the good name or reputation of the Port Authority or those of the general public, whether or not such

act or neglect is specifically mentioned in these rules.

(*See* General Rules and Regulations at 6).

**4.** Although not raised by the plaintiff, the Court notes that the Supreme Court's opinion in *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245

*Port of New York Authority*, 163 N.J.Super. 83, 85, 394 A.2d 172 (Law Div.1978); *Pinckney v. Jersey City*, 140 N.J.Super. 96, 100–103, 355 A.2d 214 (Law Div.1976) ("It is a firmly established rule in American jurisprudence that acts in derogation of sovereign immunity are to be strictly construed and that provisions which are conditions which the sovereign attaches to the waiver of immunity are jurisdictional.")

In the present case, it is undisputed that plaintiff failed to commence this suit within one year of the cause of action's accrual and failed to file a Notice of Claim. Plaintiff filed his Complaint in this Court on October 30, 1997. Even using the latest date possible, November 2, 1995—the day the arbitration award was entered—puts the Complaint almost a full year outside the statutory period. Because the plaintiff failed to file a claim within the appropriate period, this Court is divested of its jurisdiction over the state law claims. Although the plaintiff proffers several arguments to save his state law claim, none is persuasive.

■ The plaintiff argues initially that his state law claim should not be time-barred because it is rooted in the New Jersey Constitution and N.J.S.A. 32:1–163 neither states nor implies that it was meant to apply to state constitutional claims. This argument is unavailing because it is derived from the faulty premise that the statute has to explicitly or implicitly indicate its applicability to a given cause of action in order to encompass it. Courts from both sides of the Hudson River have consistently rejected this argument in their discussions of the Port Authority's consent statute. *See Trippe*, 14 N.Y.2d at 124–25, 249 N.Y.S.2d 409, 198 N.E.2d 585 ("[t]he sweeping coverage of

chapter 301 simply makes impossible any exclusion therefrom of any particular kind of suit except those specifically excluded in other parts of chapter 301."); *Ingram*, 232 N.J.Super. at 404, 557 A.2d 337 ("[t]he one exception in the limitation statute applicable to worker's compensation claims supports the Authority's argument that there are no other implied exceptions to the one-year limitation period.") Nor does the "constitutional" dimension of the plaintiff's claim save it from the jurisdictional requirements. *See Trippe*, 14 N.Y.2d at 127, 249 N.Y.S.2d 409, 198 N.E.2d 585 (dismissing plaintiff's takings claim for failure to file suit within one year of the accrual of the cause of action).

■ In the alternative, the plaintiff argues that his state law claims should not be time-barred because he was not only seeking monetary relief. Because the notice component of the statute appears to apply only to actions seeking the recovery of money, the plaintiff argues that his claims for equitable and declaratory relief are not subject to that requirement. This argument is also unavailing because the one-year statutory window applies regardless of the particular relief being sought by plaintiff.

■ Finally, the plaintiff argues that his state law claims should not be time-barred because they are governed by a six-year statute of limitations. The plaintiff derives the six year statutory period from N.J.S.A. 10:5–1, the New Jersey Law Against Discrimination. Again, this argument is without merit given the clear and narrowly defined statutory circumstances under which the legislatures of both New York and New Jersey permitted the Port Au-

(1994), does not affect the plaintiff's state law claims. In *Hess*, the Supreme Court held that the Port Authority did not enjoy eleventh amendment immunity from a *federal* statutory claim asserted against it because the claim did not expose the state treasury to any financial risk. (*Id.* at 52–53). *Hess* did not reach the question of whether state law claims

could be barred for failure to comply with the commencement of suit and notice requirements. *See Recreation World, Inc. v. Port Authority of New York and New Jersey*, 1998 WL 107362, at *4–5 (S.D.N.Y.1998) (dismissing plaintiff's state law claims for failure to comply with notice provision with consent statute).

thority's otherwise respected sovereign immunity to be abrogated.

Because it is undisputed that the plaintiff failed to file his state law claims within the statutory window defined ·in N.J.S.A. 32:1–163, the defendant's summary judgment motion with respect to the plaintiff's state law claims is granted.

### III. Summary Judgment is Granted *on Plaintiff's First Amendment Claims*[5]

In Count One, the plaintiff alleges that he was charged under an unconstitutional rule. According to the plaintiff, Chapter Four of the Port Authority's Rules and Regulations, both on its face and as applied to him, was unconstitutionally vague and overbroad. The Court disagrees.

#### A. Plaintiff Lacks the Standing *to Raise a Vagueness Challenge*

Paragraph One of Chapter Four states: No employee shall commit any act or neglect any duty which in any way is prejudicial to good order, discipline, or efficiency, or reflects unfavorably upon the good name or reputation of the Port Authority or those of the general public, whether or not such act or neglect is specifically mentioned in these rules. (Port Authority Rules at 6).

■ Initially, the plaintiff argues that this rule is unconstitutionally vague. A statute or regulation governing conduct is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The infirmity of such a regulation is that if fails to provide fair notice to potential violators or reasonably specific standards for law enforcement officials.

*Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir.1980). *See Connally*, 269 U.S. at 391, 46 S.Ct. 126. Statutory vagueness is particularly problematic as it may discourage, or "chill," the exercise of otherwise protected first amendment rights. (*Id.*)

■ An individual has standing to challenge a regulation for vagueness only if it is vague as applied to that person. *Rode v. Dellarciprete*, 845 F.2d 1195, 1200 (3d Cir.1988). "Thus, when a litigant's conduct clearly falls within the permissible purview of a [regulation], such an individual lacks standing to challenge the statute for vagueness, even though the statute may well be vague as applied to others." *Aiello*, 623 F.2d at 850; *see also Rode*, 845 F.2d at 1200.

■ In the present case, the plaintiff lacks the standing to challenge Rule Four for vagueness because any reasonable person would know that the plaintiff's conduct would reflect unfavorably upon the good name and reputation of the Port Authority. On April 14, 1993, the plaintiff pled guilty to the third-degree crime of endangering the welfare of a child. Although the government dismissed the remaining three counts of the indictment as part of the plea agreement, the plaintiff ceded during his plea colloquy that his offense included sexual contact between him and a child. (*See* Krenkel Cert., Exh. 4, Plea colloquy dated Apr. 14, 1993 at 5). Under the circumstances, there can be little doubt that plaintiff's conduct and subsequent arrest, indictment and conviction would prejudice the good order and efficiency of the Port Authority. *A fortiori*, the plaintiff could not have doubted that his conduct would reflect unfavorably upon the Port Authority. For these reasons, the Court finds that the plaintiff lacks the standing to challenge Chapter Four for vagueness.

---

**5.** Although defendant raised this argument for the first time in his reply brief, plaintiff had the opportunity to address this point in his

sur-reply. Accordingly, the Court finds no reason why it should not consider it.

B. Chapter Four is Not Overbroad, Either on Its Face *Or as Applied to Plaintiff.*

Alternatively, plaintiff argues that Chapter Four is overbroad.[6] For the following reasons, the Court also finds this claim without merit.

■■ A regulation is overbroad if it "does not aim specifically at evils within the allowable area of state control, but on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *see also Rode,* 845 F.2d at 1200. In contrast to the standing requirements governing vagueness challenges, statutory challenges founded on overbreadth may be brought by claimants regardless of whether their conduct or speech is constitutionally protected. This less stringent approach is rooted in the concern that "the possible harm ... in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ Despite a wider approach to standing, however, overbreadth challenges are not without limitations and are not all equal. Rather, the Supreme Court explained that:

[T]he plain import of our cases is, at the very least, that facial adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset[ ] attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" towards conduct and that

conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

(*Id.* at 615, 93 S.Ct. 2908). For these reasons, the Court held that a regulation which encompassed both speech and conduct could only be invalidated on its face where the overbreadth was "not only real but substantial as well, judged in relation to the [regulation's] plainly legitimate sweep." (*Id.*) In this case, it is clear that Chapter Four is not directed primarily towards pure speech or expressions thereof, but instead encompasses a significant range of constitutionally unprotected conduct. Plaintiff's own activities provides a perfect example of hardcore conduct well within the permissible scope of the Port Authority's rules. Thus, instead of simply invalidating Chapter Four *in toto* on its face, the Court must determine whether the regulation's overbreadth is substantial.

■ Based on the Supreme Court's analysis in *Broadrick,* the Third Circuit listed four factors that were relevant to a "substantial overbreadth" analysis. *Aiello,* 623 F.2d at 854–55. First, the court must balance the permissible versus the impermissible applications of the regulation. (*Id.* at 854). Second, the court should consider the historic or likely frequency of the regulation's "conceivably impermissible

6. As alleged by plaintiff:
[Chapter Four] is overbroad. The rule reaches a substantial amount of constitutionally protected speech and/or conduct.

The Rule threatens others not before this Court or any other court who desire to engage in legally protected expression.
(Compl., Count One).

regulations."[7]  (*Id.*) Third, the nature of the activity or conduct sought to be regulated should be considered.  (*Id.*) Finally, the court must assess the nature of the state interest undergirding the regulation. (*Id.* at 854).  Upon considering these factors, the Court determines that Chapter Four is not substantially overbroad.

■ First, the Port Authority's interest in Chapter Four is clear: to preserve the discipline and order within its police force and to maintain the credibility and reputation of the force with the outside, civilian populace.  Courts that have confronted cases involving similar police regulations have uniformly recognized this interest as legitimate and compelling.  *See Tindle v. Caudell,* 56 F.3d 966 at 973 (8th Cir.1995) (holding that a similar regulation governing the Little Rock Police Department was "rationally related to the department's legitimate interest in developing discipline, esprit de corps, and uniformity within its ranks") (quotations omitted); *Aiello,* 623 F.2d at 855 (noting the City of Wilmington's "legitimate concerns for efficiency, discipline and morale within the Fire Bureau, as well as public trust in the Fire Bureau's integrity"); *Kannisto v. City and County of San Francisco,* 541 F.2d 841, 844 (9th Cir.1976) (holding that a similar regulation governing the San Francisco Police Department was entitled to considerable deference because of the "state's substantial interest in creating and maintaining an efficient organization to carry out the important duties assigned by law"); *Suddarth v. Slane,* 539 F.Supp. 612, 619 (W.D.Va.1982) (holding that the Virginia State Police Department had a substantial and rational interest in preventing conduct that might harm its reputation

"since it is intended to sustain the public trust in the integrity of the very persons who are sworn to uphold the laws of the Commonwealth of Virginia"); *Wilson v. Swing,* 463 F.Supp. 555, 563 (M.D.N.C. 1978) (recognizing that the police department's interest in maintaining morale and discipline justified some infringement on first amendment rights).

Second, although the rule does not list or detail the precise activities being prohibited, it is clear enough that Chapter Four is directed towards maintaining a high standard of professional conduct and preserving the good order and reputation of the Port Authority police.  Unlike a regulation expressly proscribing officers from criticizing or ridiculing another person, *see Flynn v. Giarrusso,* 321 F.Supp. 1295 (E.D.La.1971), or one explicitly prohibiting officers from publicly disparaging an official action of a superior officer, *see Gasparinetti v. Kerr,* 568 F.2d 311 (3d Cir.1977)[8]—both of which touch upon areas traditionally subjected to close judicial scrutiny, *see Aiello,* 623 F.2d at 854—Chapter Four is simply directed towards unprotected actions that would either threaten the good order or credibility of the Port Authority.  Hardly an overt attempt to stifle free speech or expression.

Finally, and most importantly, aside from the instant case—which provides a perfect example of constitutionally unprotected conduct well within the scope of the Port Authority's realm of legitimate control and regulation—plaintiff has not proffered any evidence or testimony indicating that Chapter Four has been or is likely to be applied in a manner that chills free speech or expression.  While the Court is

---

**7.**  As the Third Circuit noted, "[i]f that frequency is relatively low, it may be more appropriate to guard against the statute's conceivably impermissible applications through a case-by-case adjudication rather than through facial invalidation."  *Aiello,* 623 F.2d at 854.

**8.**  In *Gasparinetti,* the Third Circuit invalidated a Newark Police Department regulation that stated:

> Department members shall not publicly disparage or comment unfavorably or disrespectfully on the official action of a superior officer, nor on the Rules, Regulations, Procedures or Orders of the Police Department.

> 568   F.2d at 314.

not so unimaginative that it cannot construct a scenario where Chapter Four may touch upon protected speech or conduct, the mere possibility of such an occurrence is not enough to invalidate the rule. Instead, plaintiff must prove that there is substantial overbreadth. Plaintiff has failed to do so.[9]

■ Although plaintiff also challenges the way Chapter Four was applied to him, the Court finds that argument equally without merit under the circumstances. Given the egregious nature of the plaintiff's conduct, there is simply no room for a reasonable person to find that Chapter Four was vague or overbroad as applied to the plaintiff's actions. Moreover, although plaintiff complains that he was charged prior to a conviction or trial, and that the Port Authority improperly relied upon the *Asbury Park Press* article, these are due process arguments and do not go to the question of constitutional overbreadth.

For these reasons, the Court grants the defendant's motion for summary judgment

to dismiss Count One of the plaintiff's Complaint.

## IV. The Defendant's Motion for Summary Judgment *on the Plaintiff's § 1983 Claims is Granted.*

The defendant also urges the Court to grant summary judgment on the plaintiff's § 1983 claims because the Complaint was filed outside the applicable two-year statute of limitations. The defendant bases its argument first on the fact that the statute of limitations for all § 1983 claims is two years. Second, the defendant argues that the limitations period began to run on November 1, 1993, when the Port Authority notified the plaintiff that he had been terminated. Because the Complaint was not filed until October 30, 1997, the defendant argues that the plaintiff's § 1983 claims are time-barred.[10]

While not disputing the length of the § 1983 statute of limitations period, the plaintiff contests when the limitations period began to accrue. According to the

**9.** The Third Circuit addressed a first amendment challenge very similar to the present one in *Rode v. Dellarciprete.* There, the plaintiff challenged an administrative regulation of the Pennsylvania State Police Department, which stated:

> Employees of the Pennsylvania State Police shall conduct themselves at all times in such a manner as to reflect most favorably on the Department and the Commonwealth thereby promoting good public relations. Undesirable conduct shall include immorality or any conduct not specifically mentioned in these rules which tends to bring the Department and/or Commonwealth into disrepute or reflects discredit upon the individual employee.

845 F.2d at 1200. Upon determining that the plaintiff there lacked the standing to challenge the regulation for vagueness, the court concluded that it would be imprudent to invalidate the regulation on its face given that it covered a wide range of constitutionally protected conduct. (*Id.*) Instead, the court noted that overbreadth "should be cured through a case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." (*Id.*, quoting *Broadrick*, 413 U.S. at 615–16, 93 S.Ct. 2908).

Chapter Four is nearly identical in both its scope and specificity to the regulation chal-

lenged in *Rode.* Like the regulation there, Chapter Four is designed to promote the efficiency of and discipline within the Port Authority Police force. The Rule is also designed to preserve the integrity of the Port Authority in its dealings with the public. Although Chapter Four may touch upon some protected activities at the periphery, given the overwhelming range of constitutionally unprotected activities it also prohibits, the Court believes it would be both imprudent and heavy-handed to invalidate Chapter Four altogether on its face.

**10.** The plaintiff failed to proffer any arguments in his opposition brief specifically addressing the defendant's § 1983 statute of limitations argument. Instead, the plaintiff focused on why his "constitutional claims" should not be time-barred. Despite the plaintiff's failure to distinguish between constitutional claims generally and § 1983 claims, the Court will consider the arguments made in Point II because they are germane to a discussion of statute of limitations and coincidentally assume a two-year statutory period. Moreover, the case cited by the plaintiff, *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir.1989), dealt with a § 1983 claim.

plaintiff, the statute of limitations began to run only after the Arbitrator signed the Order and Award on November 2, 1995. The plaintiff bases his argument on the terms of the "Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Police Benevolent Association, Inc.," effective July 21, 1991 to January 20, 1996. Paragraph h(iii) of that agreement states:

> The determination of the Hearing Officer as to whether the charge(s) has (have) been sustained and the disciplinary action to be taken shall be final and binding upon the Port Authority, the Association and the Police Officer charged unless referred to arbitration as provided in Appendix G of this Memorandum of agreement for a de novo hearing.

(Memorandum of Agreement at 56). Because his case was referred to arbitration for a *de novo* hearing, the plaintiff maintains that his termination was not final until the conclusion of the arbitration on November 2, 1995, and that the statute of limitations began to run on that date.

It is well established that the statute of limitations for any § 1983 claim is defined by the state statute which limits actions for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). "In New Jersey that statute is N.J.S.A. 2A:14–2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987). Accordingly, the plaintiff's § 1983 claim is governed by a two-year statute of limitations.

While the statute of limitations period for § 1983 suits is borrowed from the law of the forum state, federal law governs the accrual of such an action. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992). *See Street v. Vose*, 936 F.2d 38, 40 (1st Cir.1991); *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 42 (1st Cir.1990). Under federal law, a § 1983 cause of action begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir.1998). *See Rivera–Muriente*, 959 F.2d at 353.

In this case, the plaintiff alleges in Counts Three and Four that the defendant violated his "legally protected" and due process rights by *charging* him solely on the basis of his arrest and indictment. In Count Three, for example, the plaintiff alleges that he was *charged* under an unconstitutional rule and that Chapter Four of the Port Authority's rules was applied arbitrarily and capriciously.[11] It is worth noting that the plaintiff does not allege that his *termination* resulted from the arbitrary or capricious application of the allegedly unconstitutional rule; rather, the plaintiff focuses on his having been *charged* under an unconstitutional rule. The plaintiff was served with the Port Authority's disciplinary charges and specifications on September 21, 1992.

Similarly, in Count Four, the plaintiff alleges that the defendant unconstitutionally deprived him of his property and liberty rights by "charging" and then depriving him of his employment solely on the basis of his arrest and indictment,[12] and not a

---

**11.** Although the plaintiff vaguely titles this claim a "violation of a legally protected right," based on the description of the claim as well as the use of the "arbitrary and capricious" language, the Court proceeds under the assumption that the plaintiff attempted to assert a substantive due process claim. *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir.1998) ("To establish a substantive due process

claim, a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action.")

**12.** Although not dispositive to this motion, the Court notes that the plaintiff's employment was not actually terminated until after he had pled guilty. Plaintiff pled guilty on April 14, 1993 and was sentenced on May 21, 1993. It was only then that the Port Authority began

conviction. The plaintiff argues that these deprivations constituted violations of his due process rights under the fifth and fourteenth amendments.

It is worth pointing out that the focus of the plaintiff's § 1983 claims is not his termination, or the process by which his employment was ultimately terminated. Nor does the plaintiff explicitly challenge his suspension without pay. Instead, the plaintiff appears to focus narrowly on the fact the Port Authority "charged" him before he had been convicted, solely on the basis of his arrest and indictment. Assuming that the crux of the plaintiff's § 1983 claims is truly the allegedly defective charge and specification, then his causes of action must have accrued on or soon after September 21, 1992 when he was served with that charge. If the Port Authority's charge is the true constitutional infirmity challenged by the plaintiff, as it appears on the face of the Complaint, then neither November 1, 1993 nor November 2, 1995 should be relevant to the determination of when the cause of action accrued. Surely the plaintiff did not need to wait until either of those dates to know or realize that he had been injured or that a constitutional cause of action had accrued. Under these narrow circumstances, the plaintiff's cause of action accrued when he was served with the charge and specification on September 21, 1992, almost five years prior to the filing of his § 1983 Complaint and well outside of the two year statutory period. Accordingly, the Court grants the defendant's motion for summary judgment and dismisses the plaintiff's § 1983 claims.

### V. Plaintiff's Motion to Amend the Complaint is Denied.

Plaintiff moves in his opposition papers to amend the Complaint pursuant to Fed. R.Civ.P. 15(c) to name the individual official responsible for enforcing Chapter

its hearing on the pending disciplinary charges against Mullen, culminating in his

Four against him. The Court denies this motion.

"The grant or denial of leave to amend is a matter committed to the sound discretion of the district court. Amendment may be denied on the grounds of 'undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party ..., [or] futility of amendment....' " *Arab African International Bank v. Epstein,* 10 F.3d 168, 174 (3d Cir.1993) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

In the present case, the Court determines that the amendment requested by the plaintiff would be futile. Even if the Court were to determine that the amendment as proposed could "relate back" to the date of the original pleading, such an amendment would be futile in light of this Court's dismissal of the first amendment claim and conclusion that both the plaintiff's state law and § 1983 claims were barred for timing reasons. Accordingly, the Court denies the plaintiff's motion to amend the Complaint.

### CONCLUSION

For the foregoing reasons, the Court finds that no genuine issue of material facts exist. Accordingly, the Court grants the defendant's motion for summary judgment against the plaintiff's Complaint in its entirety, and denies the plaintiff's motion to amend the Complaint.

### ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 17th day of December, 1999,

**ORDERED** that defendant's motion for summary judgment be, and it hereby is, granted, and plaintiff's Complaint is here-

termination on November 1, 1993.

by dismissed in its entirety; and it is further

**ORDERED** that plaintiff's motion to amend the Complaint be, and it hereby is, denied.