09-3064-cv(L)
Caceres v. The Port Authority of New York & Jersey

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: April 15, 2010          Decided: January 31, 2011)

Docket Nos. 09-3064-cv(L), 09-3217-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - -x

JOSEPH CACERES,

Plaintiff-Appellant-Cross-Appellee,

- v.-

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, POLICE
OFFICER MICHAEL BARRY, (SHIELD NO. 1810), SERGEANT K.
COTRELL, (SHIELD NO. 304), POLICE OFFICER M. LYDON, (SHIELD
NO. 1585), POLICE OFFICER J. MALICE, (SHIELD NO. 2442),
POLICE OFFICER A. PINIELLO, (SHIELD NO. 1856), POLICE
LIEUTENANT ROENZO SANGIORGI, (SHIELD NO. 166), POLICE
OFFICER TRUGLIO, (SHIELD NO. 2105), individually and in
their official capacities,

Defendants-Appellees-Cross-Appellants,

JOHN DOE, 1-10 individually and in their official capacity,
the name John Doe being fictitious, as the true names are
presently unknown, JANE DOE, 1-10 individually and in their
official capacity, the name Jane Doe being fictitious, as
the true names are presently unknown,

Defendants.

- - - - - - - - - - - - - - - - - - - - - -x

    Before:        JACOBS, Chief Judge, McLAUGHLIN and SACK,
                   Circuit Judges.

The Port Authority of New York and New Jersey detained Plaintiff Caceres for two days on a warrant erroneously attributed to him. A jury assessed false-arrest damages at $10,000, joint and several, against the Port Authority and one of its officers. The United States District Court for the Southern District of New York (Koeltl, J.) entered a judgment, against the Port Authority in the amount of the verdict, and in favor of the officer as a matter of law on the ground of qualified immunity. Caceres appeals the qualified immunity ruling; the Port Authority cross-appeals on the ground that absent liability of any of its officers, vicarious liability does not lie. We affirm the judgment in favor of the officer; we vacate the judgment against the Port Authority and remand to dismiss that claim for lack of jurisdiction.

> BRETT HARRIS KLEIN, Leventhal & Klein, LLP, Brooklyn, NY, for Plaintiff-Appellant-Cross-Appellee.
>
> SCOTT CHARLES OCCHIOGROSSO, Port Authority of New York and New Jersey, New York, NY, for Defendants-Appellees-Cross-Appellants.

DENNIS JACOBS, <u>Chief Judge</u>:

Plaintiff-Appellant-Cross-Appellee Joseph Caceres was a painter on the George Washington Bridge, which is maintained and operated by the Port Authority of New York and New Jersey ("Port Authority"). After he parked near his work site without the requisite permit, his car was impounded at the Port Authority police station in New Jersey. When he went to pick up his car, a routine computer search of his name and date of birth showed that Caceres had a New York State Identification ("NYSID") number, which is a (supposedly) unique designation assigned to each arrestee by the New York State Division of Criminal Justice Services. The search also linked Caceres to a "John Doe" bench warrant. Caceres was detained for two days, until the Port Authority supervisor, Defendant-Appellee-Cross-Appellant Roenzo Sangiorgi, determined the warrant was for another person who was erroneously issued the same NYSID number as Caceres.

Caceres sued Defendant-Appellee-Cross-Appellant Port Authority and numerous Port Authority officers for, <u>inter alia</u>, false arrest under state law and for violation of his federal constitutional rights under 42 U.S.C. § 1983. A

3

jury assessed false-arrest damages at $10,000, joint and several, against the Port Authority and Sangiorgi. The United States District Court for the Southern District of New York (Koeltl, J.) entered a judgment, against the Port Authority in the amount of the verdict, and in favor of Sangiorgi as a matter of law on the ground of qualified immunity. For some reason, Caceres (not content with a damages award that was fully recoverable from the Port Authority) appealed the qualified immunity ruling; the Port Authority, which had been content to pay the judgment, then cross-appealed on the ground that absent liability of any of its officers, vicarious liability does not lie. We affirm the judgment in favor of the officer, and vacate the judgment against the Port Authority and remand to dismiss that claim for lack of jurisdiction.

**I**

Caceres challenges the qualified immunity ruling under both federal and state law. We review a district court's grant of judgment as a matter of law de novo, applying the same standards as the district court. Black v. Finantra Capital, Inc., 418 F.3d 203, 208 (2d Cir. 2005). Judgment

4

as a matter of law is appropriate when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In our review, we "consider the evidence in the light most favorable to the party against whom the motion was made" and "give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir. 1988)). Federal and state law entitlements are considered separately.

**A**

On the federal false arrest claim, Sangiorgi enjoys qualified immunity if "it was objectively reasonable for the officer to believe that probable cause existed" or if "officers of reasonable competence could disagree on whether the probable cause test was met." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).

At the threshold, Caceres argues that the warrant itself is facially invalid because it does not conform to

5

the New York Criminal Procedure Law.  However, Sangiorgi was an officer in a different jurisdiction, out of the thousands of jurisdictions in the United States, all of which may issue bench warrants with various characteristics and requirements.  Similarly, Caceres argues that Sangiorgi failed in other respects to follow proper police procedures.  Assuming that Sangiorgi erred, error is what is indulged by qualified immunity.

More particularly, Caceres emphasizes the several physical differences between himself and the descriptive particulars in the warrant.  Height, weight and age were not grossly disparate, and some other features matched.[1]  But Caceres is a light-skinned Hispanic, whereas the warrant specified a black man of dark complexion.

A reasonable officer could have concluded nevertheless that the warrant was for Caceres.  Complexion varies within a given race classification, and the descriptive terms in

---

[1] Caceres's hair color matched the description on the warrant; his dark eye color was a near match (black, compared with brown on the warrant).  The height discrepancy was two inches, the weight was within twenty pounds, and the age discrepancy was about five years.  The age difference would not necessarily be apparent to the eye, but an officer might (or might not) have noticed that the birth date in the warrant did not match the birth date that Caceres gave, or had on his license.

the warrant reflected one person's subjective classification at one point in time.[2]  A Port Authority officer might reasonably assume that the skin color and race information were entered incorrectly--particularly since height, weight, age, hair color and eye color were either accurate or within bounds.

Far more implausible was the actual explanation for the confusion: that two individuals were erroneously associated with the same NYSID number.  That is so rare (if not unique) that it was unheard-of by the testifying officers.  A reasonable officer could therefore have concluded that the "warrant hit" conferred probable cause notwithstanding an incompatible physical description, reasoning that a false hit from the historically reliable recordkeeping system-- organized by NYSID number--is at least as rare as error in the physical description fields.  Cf. United States v. Santa, 180 F.3d 20, 27 (2d Cir. 1999) (concluding that arresting officers' reliance on historically reliable warrant recording system was objectively reasonable).  Three officers of the New York City Police Department came to the

---

[2] Uncontroverted testimony by Sangiorgi established that the race and skin color information was based on observations by the arresting officer.  Trial Tr. at 660-61.

same conclusion: Caceres had been detained three times before on the basis of the same bench warrant.  See Caceres v. Port Auth. of N.Y. & N.J., 646 F. Supp. 2d 412, 418 (S.D.N.Y. 2009).  Caceres further argues that he professed innocence and explained to the Port Authority officers that the warrant was a mistake; but police are not bound to credit such protestations.

Accordingly, Sangiorgi is entitled to qualified immunity on the federal false arrest claim.

**B**

On the state law false arrest claim, Sangiorgi's liability is governed by the New Jersey Tort Claims Act ("NJTCA").  See N.J.S.A. § 59:3-1(a).  Although the NJTCA provides a statutory "good faith" exception--a variant of a qualified immunity defense--the exception is unavailable in claims for false arrest or false imprisonment.  See § 59:3-3.  However, common law defenses that existed when the NJTCA was enacted were not preempted.  See Fielder v. Stonack, 141 N.J. 101, 117 (1995) ("When liability is established under the [NJTCA], it is still subject to immunity specified in the Act *as well as any common-law immunity which predated*

8

*the Act*." (emphasis added)).

In deciding qualified immunity, the district court assumed that the New Jersey common law standard is coextensive with federal law, citing DelaCruz v. Borough of Hillsdale, 183 N.J. 149 (2005). See Caceres, 646 F. Supp. 2d at 426; Joint Appendix at 489, 496. DelaCruz is ambiguous as to the availability of qualified immunity under New Jersey common law; but the court relied on the parties' own readings of the case, which (though divergent) were consistent in material respects.[3] Under these circumstances, we accept the parties' consensus. Cf. Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984) ("The parties by their acquiescence . . . may induce the . . . court to assume that foreign law is similar to that of the forum."). We therefore need not decide what

---

[3] There is a slight disagreement about the scope of the purported DelaCruz standard. The parties agree that it is an objective reasonableness standard; Caceres suggests it is parallel to the federal version, but the Port Authority argues it is only an objective reasonableness standard, and not the disjunctive two part test for the federal defense. The disagreement is irrelevant. Because it was objectively reasonable for Sangiorgi to believe that probable cause existed, he is entitled to qualified immunity under either party's interpretation of the standard.

9

New Jersey law would be if it were clear, which it is not.[4]

Sangiorgi is entitled to qualified immunity on the state law false arrest claim for the same reasons he enjoys qualified immunity on the federal claim. (And the state law claim would be insubstantial in any event.[5])

## II

The Port Authority argues that it cannot be held vicariously liable for the conduct of an employee (such as Sangiorgi) who has successfully established immunity.[6] As a

---

[4] Compare, e.g., N.J.S.A. § 59:3-3 (excluding false arrest claims from good faith defense for public employees), with Visidor Corp. v. Cliffside Park, 48 N.J. 214, 221 (1966) ("[T]he nonliability of individual public officials for damages ensuing upon their good faith exercise of judgment and discretion in the performance of their duties, has long been recognized in our State."). See generally Tice v. Cramer, 133 N.J. 347, 355-56 (1993) ("Liability of the public employee . . . is subject to the immunities of the [NJTCA] and the common law.").

[5] Even if qualified immunity for the state law claim were unavailable, Caceres's damages would be severely limited at best: The NJTCA prohibits damages for pain and suffering in the absence of substantial bodily harm, reflecting the policy choice that "in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages . . . except in aggravated circumstances." N.J.S.A. § 59:9-2(d) & cmt.; see also DelaCruz, 183 N.J. at 164. Caceres makes no claim of substantial bodily harm.

[6] Caceres argues that the Port Authority forfeited this argument by not raising it in its Rule 50 motions before the

10

preliminary matter, we have an independent obligation to consider our subject matter jurisdiction to hear this claim even in the absence of a challenge from any party.  See <u>Dean v. Blumenthal</u>, 577 F.3d 60, 64 (2d Cir. 2009).

The Port Authority, a bi-state agency created by a compact between New York and New Jersey, enjoyed sovereign immunity until 1951, when New York and New Jersey consented to suits against it in limited circumstances.  See <u>Bunk v. Port Auth. of N.Y. & N.J.</u>, 144 N.J. 176, 183 (1996).  The Port Authority's statutory immunity was waived by identical New York and New Jersey statutes that required a sixty-day notice of claim and commencement of suit within one year from the date of the accrual of the cause of action.  See N.J.S.A. § 32:1-163; N.Y. Unconsol. Law § 7107.  These requirements are jurisdictional.  See <u>Matthews v. Port of N.Y. Auth.</u>, 163 N.J. Super. 83, 85 (Law Div. 1978), <u>aff'd</u>, 171 N.J. Super. 38 (App. Div. 1979); <u>Pinckney v. Jersey City</u>, 140 N.J. Super. 96, 100-03 (Law Div. 1976) ("It is a firmly established rule in American jurisprudence that . . . provisions which are conditions which the sovereign attaches to the waiver of

---

district court.  See <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 161 (2d Cir. 2001).  Because of the jurisdictional issue discussed <u>infra</u>, the forfeiture issue is irrelevant.

11

immunity are jurisdictional."). The failure to satisfy these conditions "will result in withdrawal of defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction." Lyons v. Port Auth. of N.Y. & N.J., 643 N.Y.S.2d 571, 571-72 (1st Dep't 1996).

This analysis is consistent with Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994), in which plaintiffs sought damages from a wholly-owned subsidiary of the Port Authority[7] under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. The claim was brought within the three-year time limit set by FELA but beyond the one-year limit specified by the New York and New Jersey consent-to-suit statutes. Relying mainly on the attenuation between the Port Authority's finances and the fiscs of New York and New Jersey, the Court held that the Port Authority lacked *Eleventh Amendment* sovereign immunity from *federal* statutory claims. Hess, 513 U.S. at 49-52. But this holding does not bear upon the validity of conditions for waiving sovereign immunity over claims arising under *state* law. See

---

[7] In Hess, the Supreme Court treated the subsidiary, PATH (Port Authority Trans-Hudson Corporation), as equivalent to the Port Authority for purposes of sovereign immunity because it is wholly owned. 513 U.S. at 33-35.

12

*Mullen v. Port Auth. of N.Y. & N.J.*, 100 F. Supp. 2d 249, 254 n.4 (D.N.J. 1999) ("*Hess* did not reach the question of whether state law claims could be barred for failure to comply with the commencement of suit and notice requirements."); *Recreation World, Inc. v. Port Auth. of N.Y. & N.J.*, No. 96 Civ. 5549, 1998 WL 107362, at *5 (S.D.N.Y. Mar. 9, 1998).

The vicarious liability in this case, if any, must arise from state law because the jury found that the Port Authority was not liable under § 1983 for failure to train, the only basis on which Caceres sought to hold the Port Authority liable under federal law. See *Caceres*, 646 F. Supp. 2d at 424 n.10; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding municipalities cannot be liable under § 1983 on vicarious liability theory); *Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 38 (2d Cir. 1985) (applying *Monell* rule to Port Authority). *Hess* therefore has no impact on whether the jurisdictional requisites have been satisfied for Caceres's state law claim.

Caceres's claim accrued when he was released from custody around midnight on August 5-6, 2004. He filed his complaint on February 27, 2006, more than one year afterward.

13

The district court therefore lacked subject matter jurisdiction to consider the claim. Although this jurisdictional issue was not raised by either party or the district court, it cannot be waived and dismissal is mandatory. See United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

For the foregoing reasons, the judgment in favor of Sangiorgi based on qualified immunity is affirmed, the judgment against the Port Authority is vacated, and the case is remanded to the district court with instructions to dismiss the claim against the Port Authority for lack of jurisdiction.