**Herbert BLACK, Plaintiff,**

v.

**FINANTRA CAPITAL, INC., Robert D. Press, Charles Litt, Maynard J. Hellman, Arthur J. Press, Evaldo F. Dupuy, Thomas W. Dwyer, Alyce B. Schreiber, and Vern E. Landeck, Defendants.**

**No. 01 Civ. 6819(JSR).**

United States District Court,
S.D. New York.

Oct. 15, 2003.

---

**340**

---

### MEMORANDUM ORDER

RAKOFF, District Judge.

Following a jury trial, judgment was entered in favor of plaintiff Herbert Black,

awarding him $1,011,363.63 in damages on his securities fraud claim against defendants Finantra Capital, Inc. ("Finantra") and Robert D. Press (all other claims and defendants having previously been dismissed by the Court). Thereafter, Finantra and Press (hereinafter "the defendants") timely moved, pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure, for judgment as a matter of law or, in the alternative, for a new trial. Since then, the Court has held these motions under consideration for some months, for, even though they raise a number of troubling issues, a responsible court must pause long and hard before reversing a jury's verdict. In the end, however, the Court finds itself obliged to grant the Rule 50(b) motion and enter judgment in defendants' favor.

Briefly stated, the gist of plaintiff's securities fraud claim in the form it was ultimately argued to the jury is that defendants fraudulently inflated the market price of Finantra's stock, so that, even though Black purchased his stock privately and well below the market price, the stock was actually worth even less than he paid for it—with the result that when the stock price fell, he was forced to sell at a loss and suffered damage thereby.[1] At trial, the Court, after some waffling, held that Black was in some respects entitled to the presumption of reliance given to a public market purchaser, *see generally Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *see also Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741

---

1. Although it is undisputed that the stock eventually became worthless, whether that fall was due to public revelation of the manipulation—and whether, therefore, plaintiff proved loss causation—is a close question, but one not pursued by defendants in their instant motion (although they do pursue the similar, and similarly close, question of whether the manipulation of the stock that led to its inflation in any material respect accounted for the public market price of the stock at the time of Black's purchase or only affected subsequent market pricing).

(1972), since, even though he purchased privately and at a reduced price, there was evidence that his price was pegged to the public price (which was why it was referred to as a "discount"). This presumption, however, is rebuttable, *see id.*, and accordingly the Court further instructed the jury that defendants could overcome the presumption of reliance "if they prove by a preponderance of the evidence that plaintiff did not in fact rely on the market price." *See* Trial Transcript ("Tr.") 673.

■ Although defendants, in their instant motions, contend that the Court erred in according Black even a rebuttable presumption of reliance, they further argue that, in any case and regardless of who had the burden of proof, the evidence ultimately put before the jury showed definitively that Black failed to materially rely on the public purchase price of the stock in making his own purchase, and that no reasonable juror could find otherwise. In this regard, they note that it was undisputed at trial that Black is a highly sophisticated private investor and speculator who, over the course of 45 years, has invested hundreds of millions of dollars in securities, *see e.g.*, Tr. 38, 48, 89–92, 96; that what interested him in Finantra, a company that he knew was losing money, was its business plan and the fact that it was recommended by a trusted friend (David Horlington), who was familiar with the business, *see e.g.*, Tr. 39–43, 97–99; and that he purchased restricted stock that could not be resold into the market for many months, *see, e.g.*, Tr. 104.

In his direct testimony at trial, Black never expressly stated that he relied on the level of the market price of the stock in making his purchase.[2] The closest he came was the following testimony (Tr. 50):

Q. At the time that you signed the [agreement to purchase Finantra shares], was the price you were paying $2.50 a share a discount to the public price of Finantra?

A. Yes.

Q. What role did this discount play in your decision to make this purchase?

A. Well, it encouraged me that I was making a good deal.[3]

On cross-examination, therefore, counsel put the question to him more directly (Tr. 103):

Q. Mr. Black, with respect to the market price of the stock of Finantra at the time you were making the decision to buy the shares, was the market price significant to you in your decision to buy the shares?

A. Yes, but in proportion to other things. I didn't make the decision solely and wholly because of the market price.

Upon giving this somewhat hedged answer, Black was confronted with his prior deposition testimony, which was read into the record (Tr. 103–04) and received for all purposes, as follows:

---

**2.** Indeed, although Black indicated in his direct testimony (Tr. 44–45) that he was made aware of the public market price (approximately $3.50 a share) at the time he entered into his arrangement to purchase his shares (at $2.50 a share), by the time he testified on cross-examination later the same afternoon he professed to have forgotten that testimony (Tr. 102).

**3.** There was some similar testimony slightly earlier in Black's direct testimony, *see* Tr. 44–45, but it was effectively withdrawn by plaintiff's counsel because of various objections made at side bar, *id.*

Q. Were there any discussions concerning the market price of the stock; do you recall?

A. Not really. I just felt that number one that the concept was terrific. I felt the potential was there. I trusted and do trust Horlington, and do trust Bob Press. And this was a great opportunity to get in with young people who know what they are doing.

Q. So is it fair to say just by way of summary that the market price of the stock at the time you invested was not a significant factor to you?

Mr. Gray [plaintiff's counsel]: I object to the form.

Q. Well, significant. Did you consider it?

A. Well, it wasn't significant. What was significant was the potential the company had because the market price is not really relevant when you can't sell the stock for six months or three months; it doesn't mean anything.

After being confronted at trial with this deposition testimony, Black was asked the following (Tr. 104):

Q. Do you recall those answers?

A. Right.

Q. And were they accurate at the time that you gave them?

A. It's still accurate.

This was Black's final word on the subject; indeed, on redirect testimony, plaintiff's counsel did not ask a single question about this subject. And Black's ultimate affirmance of the continuing accuracy of this critical deposition testimony resolved the issue of reliance definitively in defendants' favor, for it reaffirmed, under oath, that the market price was not only insig-

nificant but also irrelevant to his purchase, that, in his words, it "doesn't mean anything."

In short, even though at the time the Court believed there was a jury issue on reliance, close review of the transcript now convinces the Court that defendants proved, out of Black's own mouth, the absence of reliance, in a way that no reasonable juror could dispute.

■ As a fall-back argument, plaintiff argues that, even if Black did not materially rely on the public market price in making his investment, he would never have purchased at all if he had known that defendants were the kind of people who were manipulating the market price. But the argument is fallacious, for it effectively eliminates the reliance requirement altogether. On plaintiff's theory, an investor could sue for fraud if an issuer failed to disclose any kind of intentional misconduct occurring anywhere in the company, even if it related to matters that were wholly irrelevant to the investor's decision to purchase.

Although defendants, in their instant motions, have raised a number of other important points that might independently warrant granting their motions, the Court need not reach those other points, for it finds defendants' lack-of-reliance point dispositive.

Accordingly, the Clerk of the Court is directed to vacate the judgment previously entered in plaintiff's favor and, in its place, enter judgment in favor of defendants dismissing the case.[4]

SO ORDERED.

---

4. As a result, moreover, plaintiff's motion for    an award of prejudgment interest, attorneys'

Before the Court are Tropicana Products, Inc.'s ("Tropicana") Motion for Sum- fees, and costs, which has also been pending before the Court, is now denied as moot.