418 F.3d 203
 Herbert BLACK, Plaintiff-Appellant,
v.
FINANTRA CAPITAL, INC., Robert D. Press, Maynard J. Hellman, and Alyce B. Schreiber, Defendants-Appellees,
Charles Litt, Arthur J. Press, Evaldo F. Dupuy, Thomas W. Dwyer, and Vern E. Landeck, Defendants.
 Docket No. 03-9206.
 United States Court of Appeals, Second Circuit.
 Argued October 18, 2004.
 Decided August 8, 2005.
 
 Christopher Lovell, New York, N.Y. (Frederick W. Gerkens, III, Christopher J. Gray, Lovell Stewart Halebian LLP, of counsel), for Plaintiff-Appellant.
 Jerry D. Bernstein, New York, N.Y. (Harris N. Cogan, Jordana Cooper, Blank Rome LLP, of counsel), for Defendants-Appellees Finantra Capital, Inc., Robert D. Press, and Alyce B. Schreiber.
 W. Todd Boyd, Miami, FL (Boyd & Greene LLC, of counsel), for Defendant-Appellee Maynard J. Hellman.
 Before OAKES, SACK and PARKER, Circuit Judges.
 OAKES, Senior Circuit Judge.
 
 
 1
 A jury awarded Herbert Black $1,011,362.63 in compensatory damages on his federal securities fraud claim against defendants Finantra Capital, Inc. ("Finantra") and Robert Press, Finantra's chief executive officer and chairman of the board, for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and concomitant Rule 10b-5.[1] Black claimed that Finantra and Press had failed to disclose their scheme to inflate Finantra's stock price when they personally solicited him to privately purchase nearly ten percent of Finantra's outstanding stock at a discount to the market price.
 
 
 2
 The United States District Court for the Southern District of New York (Rakoff, J.), upon considering the defendants' Rule 50(b) motion for judgment as a matter of law for several months after the jury verdict, overturned the verdict and entered judgment in defendants' favor. See Black v. Finantra Capital, Inc., 286 F.Supp.2d 339 (S.D.N.Y.2003). The district court held that, although it had initially believed there was a jury issue on reliance, upon considering defendants' motion, it was convinced defendants had indisputably proven that Black had not materially relied on the artificially inflated market price of the stock, because Black's own testimony contained professions that the market price had not played a key role in his decision to purchase the stock. See id. at 342. In so holding, the district court rejected Black's alternative argument that because he was deceived by a material omission in a face-to-face transaction, he had proven reliance on the omission by his testimony that he would never have invested had he known of Finantra's manipulation of the stock price. See id.; see also Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).
 
 
 3
 Black now appeals this grant of judgment notwithstanding the verdict. He also appeals two of the district court's pre-trial rulings — the Rule 12(b)(6) dismissal of Securities Act of 1933 Section 12(a)(2) claims and all claims against two Finantra directors, Maynard Hellman and Alyce Schreiber, and the subsequent denial of Black's motion for leave to file a second amended complaint reinstating the dismissed claims against Hellman and Schreiber.
 
 
 4
 An examination of the record and relevant case law convinces us that the district court erred in granting defendants' Rule 50(b) motion. There was sufficient evidence to support the jury's finding that defendants did not prove that Black did not rely on the market price; therefore, we reverse and remand for reinstatement of the verdict. However, we affirm the district court's pre-trial rulings.
 
 I. Background
 
 5
 At trial, the jury heard evidence that Black purchased Finantra stock while Finantra had a scheme in place to manipulate its stock price.
 
 
 6
 Between December 1999 and February 2000, Robert Press, acting on behalf of Finantra, and David Horlington, a friend of Black's, personally solicited Black to make a direct private purchase of restricted shares from Finantra. Finantra was, at the time of the events in question, in the business of consumer finance, leasing, and accounts receivable factoring.[2] Press told Black that Finantra was a great opportunity, that it needed capital to close upcoming deals, and that it was prepared to sell Black restricted shares at a significant discount to the market price. After his initial December meeting with Press and Horlington, Black decided not to invest. However, Press and Horlington later asked Black to reconsider, and he relented, signing a stock purchase agreement on February 15, 2000, to purchase 1,599,900 shares of Finantra stock at $2.50 per share.[3] The transaction closed on March 6, 2000, when Black wire transferred the sum of $3,977,250 into an escrow account controlled by Maynard Hellman, Finantra's counsel and a member of its board.
 
 
 7
 Black and his expert witness, Robert W. Lowry, a former examiner with the Securities and Exchange Commission ("SEC"), testified that between at least December 1999 and April 2000, defendants Finantra and Press were manipulating and artificially inflating the price of Finantra stock. Black testified that Press admitted to him, during a March 2001 breakfast meeting, that Finantra had engaged in a "support operation" to achieve and maintain a stock price above the $4.00 share price necessary for Finantra's stock to be promoted to trade on The NASDAQ SmallCap Market platform. Lowry's testimony described the manipulation scheme in which Finantra, or Finantra affiliates and insiders, sold unregistered Finantra shares at below-market prices and then used the proceeds to purchase Finantra stock on the market at high prices, essentially dissipating Finantra's capital in order to buy back its own stock at an inflated price.
 
 
 8
 Lowry also testified that the broker executing Finantra's buybacks was "marking the close" by making those purchases at the end of the day, a manipulative device that maintained Finantra's reported closing share price at an artificially high level. The proceeds raised by sales of Finantra's unregistered stock were wired from a trust account controlled by Maynard Hellman to various nominee accounts maintained by Finantra at the brokerage firm Glenn Michael Financial, Inc., and were then used to buy back its shares on the open market. Finantra's accounts at Glenn Michael Financial were those of "dummy" corporations affiliated with, and in some cases having the same addresses as, Press and Finantra.
 
 
 9
 Contrary to SEC regulation, no disclosure was made of Finantra's buy-back purchases. According to Lowry's testimony, Finantra was also making undisclosed promotional payments to brokerages, such as Salomon Grey Financial and Growth Capital I, to promote the price of the stock. Finantra failed to publicly disclose that it was buying back its stock until August 2000, when it belatedly filed its June 2000 Form 10-Q.[4]
 
 
 10
 Black testified that defendants also failed to disclose their stock-price manipulation when they personally solicited his investments. Black claims the omission deceived him into making the decision to purchase Finantra stock and that he would never have purchased Finantra stock had he known of the manipulation, the buy-back plan, or the stock promotion payments.[5] (See Tr. 59, 60.) Black also testified that he was aware that, at the time of his purchase, the stock was "trading roughly at about $3.50 or $3.25 or $3.75" and that he was prepared to buy stock "off the market, restricted for a period of time, for three months or six months maximum for $2.50 a share. And I thought it was a fair deal on the basis of — I thought it was a fair deal on the basis of where the price was trading." (Tr. 44-45.) Black also testified that the discount played a role in his decision to purchase:
 
 
 11
 Q. At the time that you signed the document [i.e., the purchase agreement], was the price you were paying $2.50 per share a discount to the public price of Finantra?
 
 
 12
 A. Yes.
 
 
 13
 Q. What role did this discount play in your decision to make this purchase?
 
 
 14
 A. Well, it encouraged me that I was making a good deal.
 
 
 15
 (Tr. 50.)
 
 
 16
 However, Black's testimony also contained professions that he relied on things other than market price in coming to his investment decision. Defendants contend that the only conclusion that a reasonable juror could draw from this conflicting evidence is that there was in fact no reliance on market price. The portions of the transcript to which the defendants refer in support of this argument are as follows:
 
 
 17
 On cross-examination by defendants' counsel, Black testified:
 
 
 18
 Q. Mr. Black, with respect to the market price of the stock of Finantra at the time you were making the decision to buy the shares, was the market price significant to you in your decision to buy the shares?
 
 
 19
 A. Yes, but in proportion to other things. I didn't make the decision solely and wholly because of the market price.
 
 
 20
 (Tr. at 103.)
 
 
 21
 Defendants' counsel then sought to impeach the above trial testimony with questions regarding Black's deposition testimony:
 
 
 22
 Q. Do you recall the following [deposition] questions being asked and giving the following answers:
 
 
 23
 "Q: Well, you mentioned the stock was trading at $3.50 or $3.35 at the time?
 
 
 24
 "A: Yeah, I know.
 
 
 25
 "Q: Were there any discussions concerning the market price of the stock; do you recall?
 
 
 26
 "A: Not really. I just felt that number one that the concept was terrific. I felt the potential was there. I trusted and do trust Horlington, and do trust Bob Press. And this was a great opportunity to get in with young people who know what they are doing.
 
 
 27
 "Q: So is it fair to say just by way of summary that the market price of the stock at the time that you invested was not a significant factor to you?
 
 
 28
 Mr. Gray [plaintiff's counsel]: I object to the form.
 
 
 29
 "Q: Well, significant. Did you consider it?
 
 
 30
 "A: Well, it wasn't significant. What was significant was the potential that the company had because the market price is not really relevant when you can't sell the stock for six months or three months; it doesn't mean anything."
 
 
 31
 Do you recall those answers?
 
 
 32
 A: Right.
 
 
 33
 Q: And they were accurate at the time that you gave them?
 
 
 34
 A: It's still accurate.
 
 
 35
 (Tr. at 103-04.)
 
 
 36
 At trial, the judge gave the following jury instruction on reliance:
 
 
 37
 [P]laintiff must prove ... third, that plaintiff relied on the market price of the stock in purchasing his stock, even if he purchased at a discount....
 
 
 38
 ....
 
 
 39
 The third element, as mentioned, is that plaintiff relied on the market price of the stock in making his decision to purchase, each [sic] though he purchased at a discount, because his discount was a discount from what he understood was the market price. In this regard, because there is an inherent reliance on the integrity of the public market place in setting prices for securities, if you find that the market price was secretly and artificially inflated then a presumption arises that plaintiff relied on the market price to his detriment. The defendants, however, can overcome this presumption if they prove by a preponderance of the evidence that plaintiff did not in fact rely on the market price.
 
 
 40
 (Tr. at 672-73.)
 
 
 41
 The district court, however, declined to charge the jury with one of the plaintiff's proposed jury instructions based on Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), because the plaintiff's submission was untimely; plaintiff had submitted the charge that very morning. (See Tr. 650-51.) The proposed instruction provided that if the jury found that, despite a defendant's material omissions, "the plaintiff would have engaged in the transaction anyway and that the false statements had no effect upon his decision, then there was no reliance and the plaintiff has not established a claim under the Securities Exchange Act." Pl.'s Request to Charge at 6, Black v. Finantra Capital, Inc., 286 F.Supp.2d 339 (S.D.N.Y.2003) (No. 1:01-cv-06819-JSR). Furthermore, according to the proposed instruction, if the jury found "that the defendants made an omission of fact or failed to disclose a material fact, then you must presume that the plaintiff relied on the omission or failure to disclose." Id. The district court declined to so charge the jury, however, and only offered the jury instruction permitting a presumption of reliance on market price.[6]
 
 II. Discussion
 
 42
 We review de novo the district court's grant of defendants' motion for judgment as a matter of law. Jarvis v. Ford Motor Co., 283 F.3d 33, 43 (2d Cir.2002). On our review, we apply the same standard that a district court must apply. Id.; see also LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir.1995). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). In reviewing the district court's ruling on this Rule 50 motion, we are "required to `consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'" Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir.2001) (quoting Smith v. Lightning Bolt Prods., Inc, 861 F.2d 363, 367 (2d Cir.1988)). A court evaluating such a motion "`cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" Id. at 70 (quoting Smith, 861 F.2d at 367).
 
 
 43
 It is well settled that reliance is an element of a Rule 10b-5 cause of action. See Basic Inc. v. Levinson, 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Where there has been a material misrepresentation pertaining to shares that trade in a developed market, the plaintiff may meet its burden of proof through a "fraud on the market" presumption of reliance on market price. Id. at 247, 108 S.Ct. 978. Similarly, in the case of omissions, reliance on the omitted information may be presumed where such information is material. See Affiliated Ute, 406 U.S. at 153-54, 92 S.Ct. 1456. These presumptions are, however, rebuttable. Basic, 485 U.S. at 248, 108 S.Ct. 978 (stating that fraud on the market presumption is rebuttable); duPont v. Brady, 828 F.2d 75, 78 (2d Cir.1987) (noting that presumption of reliance on material omissions is rebuttable).
 
 
 44
 Here, the district court correctly instructed the jury: "[If] you find that the market price was secretly and artificially inflated then a presumption arises that plaintiff relied on the market price to his detriment. The defendants, however, can overcome this presumption if they prove by a preponderance of the evidence that plaintiff did not in fact rely on the market price." Ct.'s Instructions of Law to the Jury at 12, Black, 286 F.Supp.2d 339. In ruling for defendants on their Rule 50(b) motion, the court concluded that "defendants proved, out of Black's own mouth, the absence of reliance, in a way that no reasonable juror could dispute." Black, 286 F.Supp.2d at 342.
 
 
 45
 Black argues, inter alia, that the evidence adduced at trial was sufficient to allow a reasonable juror to conclude that he did rely on market price. Thus, he asserts that it was error for the district court to conclude as a matter of law that defendants proved that he did not do so. Defendants reply that, irrespective of who had the burden of proof on reliance, the evidence allows for only one conclusion: that Black did not rely on market price in purchasing the Finantra stock.
 
 
 46
 We conclude that there was a legally sufficient evidentiary basis for a reasonable jury to find that the defendants did not establish that Black did not rely on the market price of the stock in purchasing his stock at a discount.
 
 
 47
 While the district court and the defendants point to certain portions of Black's testimony as evidence that Black relied on factors other than market price in making his investment decision, and defendants argue that such evidence either rebuts any presumption of reliance, or negates the effect of any affirmative evidence that Black relied on market price, we do not find that Black's testimony forecloses a jury finding of reliance on market price. Nor do we agree that Black's testimony as a whole indisputably proves the absence of reliance. The jury was free to weigh all the testimony, and either to discredit it or to accept a different interpretation of Black's testimony that the current market price was "not really relevant when you can't sell the stock for six months or three months," (Tr. at 104.), or to credit Black's testimony that he took market price into account, because, not surprisingly, the current market price was what determined whether he was "making a good deal." (Tr. at 50.) The fact that Black also took other considerations, such as Finantra's future prospects, its business plan, and his trust in the people soliciting his investment, into account in making his investment decision does not foreclose a finding of material reliance upon market price. Thus, the jury could have found that price was relevant to Black's decision to purchase the shares.
 
 
 48
 In sum, the testimony at trial was sufficient to establish that Finantra, Press, and Black privately negotiated a transaction where the market price of the stock, from which the discount at which stock would be sold to Black was determined, was one of several factors taken into account in Black's investment decision, and this evidence was sufficient to establish material reliance on market price.
 
 III. Pre-Trial Rulings
 
 49
 By order dated November 26, 2001, at the pleadings stage, the district court dismissed Black's Section 12(a)(2) claims for failure to allege facts sufficient to show that Black's private purchase was sufficiently related to a public offering of securities. By the same order, the district court also dismissed all claims against individual defendants, other than Robert Press, for failure to sufficiently allege scienter or control of corporate activities. When, after the close of discovery, Black proposed a second amended complaint at the final pre-trial conference, seeking to add new claims and reinstate those dismissed against defendants Hellman and Schreiber, the district court, by order dated July 18, 2002, denied the motion to amend because it was untimely and because it would be prejudicial to defendants.
 
 
 50
 For the reasons cited by the district court, we affirm the pre-trial rulings.
 
 IV. Conclusion
 
 51
 Accordingly, having found error in the grant to defendants of judgment as a matter of law after trial, we reverse and remand to the district court for reinstatement of the jury's verdict. However, the district court's pre-trial rulings are affirmed.
 
 
 
 Notes:
 
 
 [1]
 The jury found the defendants not liable on Black's common law fraud claims
 
 
 [2]
 Finantra's operations ceased as of May 2001, and its shares no longer publicly trade
 
 
 [3]
 Of those shares, Black purchased 400,000 for his friend Mr. Horlington's account. In this suit, Black seeks redress only for the 1,199,900 shares he purchased for his own account
 
 
 [4]
 When Finantra disclosed that it was not going to be able to timely file its required 10-K for the fiscal year ending December 31, 2000 (i.e., by the end of March 2001), the price of Finantra's stock declined substantially. Lowry testified that after this signal to investors that something was awry at Finantra, the price of Finantra's stock lost in excess of 80 percent of its value, and that, in his opinion, had the actual market manipulation been disclosed to investors at the time of Black's purchase, the price of Finantra's stock would have declined by 50 percent or more.
 
 
 [5]
 On direct examination, Black was asked, "Had you known that the monies, that Finantra was going to be using monies to buy at four dollars per share and more what they were selling to you at 2.50 per share, would you ever have made this investment?" and answered, "Never. There would be no logic to it." (Tr. 59.) And, again on direct questioning, "Had you, had it come to your attention that Finantra was paying people to promote and leverage the stock price, would you have made the purchase?" Black answered, "No, I wouldn't have made the purchase and I was not aware of it." (Tr. 60.)
 
 
 [6]
 Plaintiff's counsel objected to the refusal to charge, moved for reconsideration, and makes the refusal a claim of error on this appeal. Because we find that the evidence was sufficient to support a jury finding of reliance on market price, we need not address the district court's refusal to charge on the presumption of reliance that would have been available toBlack under the rule of Affiliated Ute.