23-916-cv
*Baroni v. Port Authority of New York and New Jersey*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 23-916

**WILLIAM E. BARONI, JR.**
*Plaintiff-Appellant*,

v.

**THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,**
*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the Southern District of New York

---

ARGUED: JANUARY 16, 2024
DECIDED: DECEMBER 2, 2025

---

Before:      WALKER, CARNEY, and MENASHI, *Circuit Judges*.

Defendant-Appellant William Baroni sued his former employer, the Port Authority of New York and New Jersey, for indemnification for legal expenses. The district court dismissed the complaint for lack of subject matter jurisdiction on the ground that Baroni failed to plead that the Port Authority had waived its state sovereign immunity. As the Supreme Court has held, however, the

Port Authority does not have the sovereign immunity "that a State enjoys." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 33 (1994). Baroni therefore did not need to plead that it had waived its immunity. We vacate the judgment of the district court and remand for further proceedings.

Judge Carney concurs in the judgment in a separate opinion.

————

MICHAEL A. LEVY (Christopher M. Egleson, Michael D. Mann, Danica L. Brown, Alyssa M. Hasbrouck, James R. Horner, *on the brief*), Sidley Austin LLP, New York, NY, *for Plaintiff-Appellant*.

PETER G. NEIMAN (Anjan S. Sahni, Alan Schoenfeld, Marissa M. Wenzel, *on the brief*), Wilmer Cutler Pickering Hale & Dorr LLP, New York, NY, *for Defendant-Appellee*.

————

MENASHI, *Circuit Judge*:

Defendant-Appellant William Baroni was an employee of the Port Authority of New York and New Jersey. He was tried and convicted of crimes related to his role in the "Bridgegate" scandal. Ultimately, however, his conviction was vacated and the indictment dismissed. Baroni then sued the Port Authority for indemnification covering the roughly $4 million in legal expenses he incurred for his criminal defense.

The district court dismissed the complaint for lack of subject matter jurisdiction on the ground that Baroni had failed to adequately allege that the Port Authority had waived its state sovereign immunity. The Supreme Court has held, however, that the Port

Authority "is not cloaked" with the sovereign immunity "that a State enjoys." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 32-33 (1994). Because the Port Authority lacks state sovereign immunity from suit, Baroni did not need to allege that it had waived its immunity. We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.[1]

## BACKGROUND

The Port Authority is a bi-state agency created through a compact between New York and New Jersey that Congress approved. Through identical statutes in each respective jurisdiction, New York and New Jersey consented to waive sovereign immunity for the Port Authority

> upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued, and upon the further condition that in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the port authority by or on

---

[1] We have previously held that the Port Authority may lack state sovereign immunity under the federal Constitution but still retain sovereign immunity from state law claims in federal court. *See Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 625 (2d Cir. 2011). We overrule that precedent through our mini *en banc* procedure. *See United States v. Peguero*, 34 F.4th 143, 158 n.9 (2022). In accordance with that procedure, "we have circulated our opinion to all active judges of the court prior to filing and received no objection." *United States v. Bedi*, 15 F.4th 222, 232 (2d Cir. 2021). The role of the *en banc* court is limited to overruling the holding of *Caceres* that the Port Authority has sovereign immunity from state law claims in federal court and does not extend to other issues in this appeal.

behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced.

N.Y. Unconsol. Law § 7107 (McKinney 1950) (footnote omitted); *see also* N.J. Stat. § 32:1-163.

**I**

William E. Baroni served as the deputy executive director of the Port Authority. While serving in that position in September 2013, Baroni approved a plan to modify the deployment of traffic cones in the New Jersey approaches to the George Washington Bridge. The plan substantially increased traffic for residents of Fort Lee, New Jersey. It was reported in the press that the plan aimed to retaliate against the mayor of Fort Lee, who had refused to endorse then-Governor Chris Christie for re-election. The resulting political scandal was known as "Bridgegate." Baroni became a subject of investigations by the New Jersey Legislature and the U.S. Attorney for the District of New Jersey.

On December 12, 2013, Baroni received his first subpoena from a select committee of the New Jersey Legislature. Within five days of receiving the subpoena, Baroni "confirmed that the subpoena was delivered to the general counsel of the Port Authority, either by forwarding it himself or by confirming that the general counsel had already received it." J. App'x 233 (Proposed First Am. Compl. ¶ 20).

From December 13, 2013, to March 12, 2014, as Baroni's conduct continued to be investigated, Baroni repeatedly requested that the Port Authority indemnify him pursuant to Paragraph 7 of Article XI of the bylaws of the Port Authority. That paragraph provided as follows:

The Port Authority may, consistent with applicable law, provide for a defense when punitive damages are sought

4

or criminal charges are asserted, in connection with any alleged act or omission which occurred or is alleged in the complaint to have occurred while the individual was acting within the scope of Port Authority employment or duties, based upon an investigation and review of the facts and circumstances and a determination by General Counsel that provision of such defense would be in the best interest of the Port Authority; provided, however, that the Port Authority shall provide reimbursement of defense costs incurred by or on behalf of an indemnified party in defense of a criminal proceeding arising out of such an act or omission, upon acquittal or dismissal of the criminal charges. Furthermore, the Port Authority may, consistent with applicable law, indemnify or save harmless an indemnified party with respect to fines or penalties, based upon an investigation and review of the facts and circumstances of the case and a determination by General Counsel that to indemnify and save harmless such indemnified party would be in the best interest of the Port Authority.

*Id.* at 72. After several such requests, on February 18, 2014, the general counsel of the Port Authority emailed Baroni, copying the executive director of the Port Authority and Baroni's counsel. The general counsel stated that the Port Authority had received Baroni's requests for "legal representation and indemnification" and would review those requests. *Id.* at 234 (Proposed First Am. Compl. ¶ 22). Subsequently, the general counsel "informed" Baroni's counsel that "Baroni had done everything he needed to do to make his request for payment of legal fees and indemnification, and that Mr. Baroni should stop reiterating his request for payment of his legal fees and indemnification." *Id.* (Proposed First Am. Compl. ¶ 23). He added that "the Port Authority had no immediate plan to act on Mr. Baroni's

requests." *Id*. The Port Authority never provided the advance payments that Baroni requested.

On April 23, 2015, a federal grand jury in New Jersey indicted Baroni—along with Bridget Anne Kelly, an aide to Governor Christie—on nine counts of fraud, deprivation of civil rights, conspiracy to commit fraud, and conspiracy to commit deprivation of civil rights. In a press release, the Port Authority stated that it had received and was reviewing the indictment. According to Baroni's allegations, "delivery to the General Counsel of a copy of the indictment was in fact made within five days after the indictment was made public," as the bylaws required for indemnification. *Id.* at 236 (Proposed First Am. Compl. ¶ 27) (internal quotation marks and alterations omitted).

In November 2016, Baroni was convicted following a trial in the U.S. District Court for the District of New Jersey and sentenced to twenty-four months in prison. Jury Verdict at 1-3, *United States v. Baroni*, No. 15-CR-193 (D.N.J. Nov. 4, 2016), ECF No. 283; Judgment at 3, *United States v. Baroni*, No. 15-CR-193 (D.N.J. Mar. 30, 2017), ECF No. 332. The U.S. Court of Appeals for the Third Circuit affirmed the judgment of conviction with respect to the fraud counts but decided to "reverse and vacate" with respect to the "civil rights convictions." *United States v. Baroni*, 909 F.3d 550, 588 (3d Cir. 2018). It remanded to the district court with instructions to dismiss those counts of the indictment and to resentence Baroni on the remaining counts. *Id.* at 588-89. On remand, Baroni received a sentence of eighteen months. Amended Judgment at 2, *United States v. Baroni*, No. 15-CR-193 (D.N.J. Feb. 27, 2019), ECF No. 383. In 2020, the Supreme Court of the United States reversed the judgment with respect to the fraud convictions because the conduct "could not have violated the federal-program fraud or wire fraud laws." *Kelly v. United States*, 590 U.S. 391,

404 (2020). On June 11, 2024, the district court dismissed the indictment. Dismissal Order at 1-2, *United States v. Baroni*, No. 15-CR-193 (D.N.J. June 11, 2020), ECF No. 415. Throughout this process, Baroni incurred legal fees of about $4 million.

On September 25, 2020, following the reversal of his convictions, Baroni sent the Port Authority a letter seeking indemnification for his legal expenses under Paragraph 7. On October 23, 2020, the Port Authority rejected Baroni's request on the ground that Baroni was acting outside the scope of his employment when he made the traffic decisions leading to his prosecution. On March 5, 2021, Baroni served a notice of claim on the Port Authority.

## II

On June 9, 2021, Baroni sued the Port Authority in New York state court. On July 12, the Port Authority removed the case to the U.S. District Court for the Southern District of New York.

In federal court, the Port Authority moved to dismiss the complaint on two grounds. First, it argued that the district court lacked subject matter jurisdiction over the case. The state statutes that waived the sovereign immunity of the Port Authority limited the waiver to claims that had accrued. According to the Port Authority, Baroni's claim had not accrued because he had failed to provide the required notice of his claim for indemnification. The notice requirement proceeds from Paragraph 8 of Article XI of the bylaws, which reads:

> The benefits of this Article XI shall be conditioned upon (i) delivery to General Counsel of the original or a copy of any summons, complaint, process, notice, demand or pleading within five days after receipt or service of such document, such delivery being deemed a request by the

7

party seeking indemnification that the Port Authority provide for defense pursuant to this Article XI; (ii) the full cooperation of the indemnified party in the defense ...; and (iii) the agreement of the indemnified party that the Port Authority shall be entitled to withdraw such defense and demand reimbursement from such party for costs.

J. App'x 72. The Port Authority argued that the first condition was not satisfied because Baroni had not delivered to the Port Authority a copy of the judgment of acquittal, which was the relevant "summons, complaint, process, notice, demand or pleading." According to the Port Authority, the failure to make that delivery meant that the claim for indemnification had not accrued, which in turn meant that the waiver of sovereign immunity had not been triggered, depriving the district court of subject matter jurisdiction.

Second, the Port Authority argued that Baroni failed to state a claim because the conduct for which he sought indemnification fell outside the scope of his employment at the Port Authority.

The district court granted the motion to dismiss for lack of subject matter jurisdiction on the ground that the Port Authority had not waived its sovereign immunity. The district court concluded that "by failing to allege, or submit any evidentiary proffer, that [Baroni] has fulfilled the condition precedent to his right to receive indemnification from the Port Authority under Article XI of the By-Laws, [Baroni] has failed to establish that the [district court] has jurisdiction of the dispute by a preponderance of the evidence because there is no showing that [the Port Authority] has waived its sovereign immunity with respect to his claims." *Baroni v. Port Auth. of N.Y. & N.J.*, No. 21-CV-5961, 2022 WL 4385585, at *5 (S.D.N.Y. Sept. 22, 2022).

8

Normally, non-compliance with a condition precedent is an affirmative defense. *See Endovasc, Ltd. v. J.P. Turner & Co., LLC*, 169 F. App'x 655, 657 (2d Cir. 2006). In this case, however, the district court decided that the "failure to plead compliance with the condition precedent to the Port Authority's contractual obligation to provide indemnification deprives the [district court] of jurisdiction of the dispute," *Baroni*, 2022 WL 4385585, at *5, on the ground that "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry," *id.* (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). Because "[t]he Port Authority's waiver of sovereign immunity only applies to claims that have accrued," *id.*, the district court concluded that it lacked jurisdiction unless "the conditions precedent to filing suit have been satisfied," *id.* (quoting *Hirth v. Am. Ins. Co.*, No. 15-CV-3245, 2016 WL 75420, at *4 (S.D.N.Y. Jan. 7, 2016)).

Following the dismissal of the complaint, Baroni sought leave to amend the complaint to allege additional facts that would address the concerns of the district court. In particular, in his proposed First Amended Complaint, Baroni alleged that he complied with the notice requirement through his repeated requests for reimbursement; that the first condition of Paragraph 8 was satisfied because the Port Authority received a copy of the indictment; and that the Port Authority had waived any right to demand a different form of compliance by telling Baroni that he had adequately made a request for indemnification and did not need to take additional steps to establish such a request.

The district court denied the motion for leave to amend on the ground of futility. The district court held that the condition precedent in Paragraph 8 required delivery of the judgment of acquittal, rather than the indictment, because the judgment of acquittal was "the

9

document on which his claim to entitlement to an award of attorney's fees is based." *Baroni v. Port Auth. of N.Y. & N.J.*, No. 21-CV-5961, 2023 WL 4029343, at *5 (S.D.N.Y. June 15, 2023). The district court additionally held that the Port Authority "could not have 'waived' the By-Law requirements" and "cannot be estopped from arguing that Mr. Baroni did not comply with the requirements of the By-Laws." *Id.* at *6-7. For these reasons, the proposed amended complaint was "insufficient to demonstrate that the [district court] has subject matter jurisdiction to hear Mr. Baroni's claim because it does not allege that Mr. Baroni delivered the judgment of acquittal within five days after Mr. Baroni received that document" and accordingly filing the amended complaint would be futile. *Id.* at *7.

On June 16, 2023, Baroni timely filed a notice of appeal.

## LEGAL STANDARDS

"It is well settled that 'where a district court grants a defendant's Rule 12(b)(1) motion to dismiss, an appellate court will review the district court's factual findings for clear error and its legal conclusions *de novo*.'" *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (alteration omitted) (quoting *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005)).

Because state sovereign immunity is "a jurisdictional limitation on the power of federal courts," *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004), it may deprive such a court "of subject matter jurisdiction," *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001). Accordingly, state sovereign immunity raises "a threshold question that must be resolved … before proceeding to the merits." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).

10

## DISCUSSION

"[T]he States entered the federal system with their sovereignty intact," and "the judicial authority in Article III is limited by this sovereignty." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, (1991). The States therefore possess an "immunity from suit" that "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today" because "[t]he federal system established by our Constitution preserves the sovereign status of the States." *Alden v. Maine*, 527 U.S. 706, 713-14 (1999).

The Port Authority, however, is not a State but a "bistate entity" created through an interstate compact accorded congressional consent. *Hess*, 513 U.S. at 43. The Port Authority occupies "a significantly different position in our federal system than do the States themselves." *Id.* at 40. Indeed, the Supreme Court has specifically held that the Port Authority "is not cloaked" with the sovereign immunity "that a State enjoys." *Id.* at 32-33. As a result, the Port Authority is "not entitled" to "immunity from suit in federal court." *Id.* at 39.

In this case, the district court decided that state statutes purporting to immunize the Port Authority from suit under certain circumstances could deprive the federal courts of subject matter jurisdiction over a lawsuit—even though the Port Authority possesses no sovereign immunity that limits the judicial authority conferred to the federal courts under Article III. That was erroneous. "A State is free to develop its own justiciability rules governing state tribunals," and for that reason there may be a "*state-law* immunity from suit in a state forum." *PennEast Pipeline Co., LLC v. New Jersey*,

11

594 U.S. 482, 509 n.1 (2021) (Gorsuch, J., dissenting). But "in federal court, state-law immunity is not implicated." *Id.*

Because the Port Authority does not possess state sovereign immunity that limits the subject matter jurisdiction of a federal court, the district court erred in dismissing the complaint for lack of subject matter jurisdiction. We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## I

"In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 589 U.S. 248, 254 (2020). The Supreme Court has "sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity'" because the Eleventh Amendment "makes explicit reference" to that immunity. *Alden*, 527 U.S. at 712-13. The terms of the Eleventh Amendment describe the immunity of a State from suits brought by citizens of other States. [2] "Despite the narrowness of its terms," however, the Supreme Court has "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their

---

[2] The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment was written narrowly because Congress did not aim "to enact language codifying the traditional understanding of sovereign immunity but rather to address the specific provisions of the Constitution that had raised concerns during the ratification debates and formed the basis of the *Chisholm* decision." *Alden*, 527 U.S. at 723 (referencing *Chisholm v. Georgia*, 2 U.S. 419 (1793)).

12

sovereignty intact; that the judicial authority in Article III is limited by this sovereignty; and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.'" *Blatchford*, 501 U.S. at 779 (citations omitted). As the Court long ago explained, "the cognizance of suits and actions unknown to the law, and forbidden by the law, was not contemplated by the constitution when establishing the judicial power of the United States," and "[t]he suability of a state, without its consent, was a thing unknown to the law." *Hans v. Louisiana*, 134 U.S. 1, 15-16 (1890).

As a result, while the phrase "Eleventh Amendment immunity" may be a "convenient shorthand," it is "something of a misnomer" because "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden*, 527 U.S. at 713. Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution" and which "exists today by constitutional design." *Id.* at 713, 733. The Supreme Court has consistently identified a single "principle of sovereign immunity preserved by constitutional design." *Id.* at 748.[3]

---

[3] *See also PennEast*, 594 U.S. at 499 (majority opinion) ("Since *Hans*, we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms.") (internal quotation marks omitted); *Allen*, 589 U.S. at 254 ("[T]his Court has long understood [the Eleventh] Amendment to stand not so much for what it says as for the broader presupposition of our constitutional structure which it confirms.") (internal quotation marks omitted); *Franchise Tax Bd. v. Hyatt*, 587 U.S. 230, 243 (2019) ("The sovereign immunity of the States, we have said, neither derives from, nor is limited by, the terms of the Eleventh Amendment.") (internal quotation marks omitted); *N. Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193 (2006)

## A

"It has long been settled" that state sovereign immunity precludes "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). To decide "whether a state instrumentality may invoke the State's immunity," the Supreme Court has "inquired into the relationship between the State and the entity in question." *Id.* It has "sometimes examined the essential nature and effect of the proceeding and sometimes focused on the nature of the entity created by state law to determine whether it should be treated as an arm of the State." *Id.* at 429-30 (internal quotation marks, citations, and footnote omitted). The Court has explained that "whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued." *Id.* at 430.

We need not apply this analysis in this appeal because the Supreme Court has already expressly held that the Port Authority "is not cloaked with the Eleventh Amendment immunity that a State enjoys" and is "not entitled to Eleventh Amendment immunity from suit in federal court." *Hess*, 513 U.S. at 32-33, 39.

In *Hess*, the Court explained that a bistate entity such as the Port Authority does not resemble the sovereign States that are "the

---

("[T]he immunity of States from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today except as altered by the plan of the Convention or certain constitutional Amendments.") (internal quotation marks and alteration omitted).

constituent elements of the Union." *Id.* at 40. Instead, the Port Authority is the creation "of three discrete sovereigns"—two States and the federal government—that, through Congress, approved the interstate compact under the Compact Clause. *Id.* "Suit in federal court is not an affront to the dignity of a Compact Clause entity" because "the federal tribunal cannot be regarded as alien in this cooperative, trigovernmental arrangement." *Id.* at 41-42. Moreover, "[b]ecause Compact Clause entities owe their existence to state and federal sovereigns acting cooperatively, and not to any 'one of the United States,' their political accountability is diffuse" and "they lack the tight tie to the people of one State that an instrument of a single State has." *Id.* at 42 (citation omitted).

As a result of these features, a "Compact Clause agency does not qualify for Eleventh Amendment immunity 'unless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves, and that Congress concurred in that purpose.'" *Id.* at 43-44 (alteration omitted) (quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979)). The Court said that such a good reason was lacking in the case of the Port Authority because "the Port Authority is financially self-sufficient; it generates its own revenues, and it pays its own debts," such that "[r]equiring the Port Authority to answer in federal court … does not touch the concerns—the States' solvency and dignity—that underpin the Eleventh Amendment." *Id.* at 52.

Three years after *Hess*, the Supreme Court decided *Regents of the University of California v. Doe*, in which it held that the University of California retained state sovereign immunity even though the federal government had agreed to indemnify it against the costs of litigation. "In *Hess*," the Court explained, "we evaluated the

15

relationship between an entity created by a bistate compact and the States that had joined to create that entity in order to determine whether that entity could properly be denominated as an 'arm' of either of its founding States for the purposes of the Eleventh Amendment." *Regents*, 519 U.S. at 430. The Court noted that it had considered "the position of the bistate entity as a unique creature within the federal system and the nature of the claims at issue in the underlying proceeding" but "focused particular attention on the fact that 'both legally and practically' neither of the relevant States would have been obligated to pay a judgment obtained against the bistate entity." *Id.* (citation omitted) (quoting *Hess*, 513 U.S. at 51). In *Regents*, by contrast, the State of California would be subject to an adverse judgment against the University of California "even though the State may be indemnified by a third party." *Id.* at 431. The Court reaffirmed *Hess* in holding that "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Id.*

The holding of the Supreme Court in *Hess* was not unanimous.[4] But "[w]e are bound to follow the existing precedent of the Supreme Court until that Court tells us otherwise." *McKinney v. City of Middletown*, 49 F.4th 730, 746 (2d Cir. 2022) (quoting *N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 79 (2d Cir. 2019)). Thus, the Port Authority has no sovereign immunity from suit that limits the jurisdiction of the federal courts.

---

[4] *See Hess*, 513 U.S. at 56-57 (O'Connor, J., dissenting) ("[T]he Court attaches undue significance to the requirement that Congress consent to interstate compacts. … Once Congress consents to cooperative state activity, there is no reason to presume that immunity does not attach. Sovereign immunity, after all, inheres in the permissible exercise of state power.").

**B**

The district court might be forgiven for evading the binding holding of *Hess* because the district court relied on a similar evasion by our court. *See Baroni*, 2023 WL 4029343, at *4 (citing *Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 624 (2d Cir. 2011)).

In *Caceres v. Port Authority of New York and New Jersey*, we acknowledged that the Supreme Court held in *Hess* that "the Port Authority lacked *Eleventh Amendment* sovereign immunity from *federal* statutory claims," but we said that "this holding does not bear upon the validity of conditions for waiving sovereign immunity over claims arising under *state* law." 631 F.3d at 625. No party in the *Caceres* litigation argued that the Port Authority had sovereign immunity from suit. Yet our court explained that "[a]lthough this jurisdictional issue was not raised by either party or the district court, it cannot be waived and dismissal is mandatory." *Id.*

In this way, our court in *Caceres* assumed that there were two forms of state sovereign immunity. First, there was "Eleventh Amendment sovereign immunity," which applied only to "federal statutory claims" and could be waived by a state entity consenting to suit. *Id.* (emphasis omitted). Second, there was a separate "sovereign immunity" that applied to "claims arising under state law" and "cannot be waived." *Id.* (emphasis omitted).

That assumption is incorrect and cannot be reconciled with controlling precedent from the Supreme Court. Although the Supreme Court has used the phrase "Eleventh Amendment immunity," it has explained that the phrase serves as "shorthand" for "[t]he principle of sovereign immunity preserved by constitutional design." *Alden*, 527 U.S. at 713, 748. The Court has consistently identified state sovereign immunity as a unitary concept that derives

17

not from the Eleventh Amendment but from the constitutional structure. *See supra* note 3.

In fact, the Court has specifically rejected the argument that a public entity which lacks "Eleventh Amendment immunity" may nevertheless claim "a distinct 'residual' immunity" that protects entities exercising "power delegated from the State." *Chatham County*, 547 U.S. at 192-94. In *Chatham County*, the County "conceded that Eleventh Amendment immunity did not extend to counties" but argued that "it was immune under 'the universal rule of state immunity from suit without the state's consent.'" *Id.* at 192. The appellate court agreed that "common law has carved out a 'residual immunity,' which would protect a political subdivision such as Chatham County from suit." *Id* at 193. The Supreme Court, however, held that there was no second form of state sovereign immunity that limited the jurisdiction of the federal courts. "[T]his Court has referenced only the States' 'residuary and inviolable sovereignty' that survived the Constitution." *Id.* at 194 (quoting The Federalist No. 39, at 245 (James Madison) (Clinton Rossiter ed., 1961)). Because that is the only state sovereign immunity that Article III incorporates, "the County is subject to suit unless it was acting as an arm of the State, as delineated by this Court's precedents," such that it shares in the sovereignty of the State. *Id.*

We know that the Port Authority lacks the sovereign immunity "that a State enjoys," *Hess*, 513 U.S. at 33, and that under the applicable case law there is no other kind. We also know that the state sovereign immunity reflected in the Eleventh Amendment applies to state law claims. *See, e.g., Hyatt*, 587 U.S. at 234 (involving state law tort claims); *Regents*, 519 U.S. at 428-29 (involving state law claim for breach of contract); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993) (involving "a diversity action …

18

alleging breach of contract and damage to [a party's] business reputation"). Even those justices who have endorsed a more restrictive view of state sovereign immunity have agreed that it applies at least to claims "rooted in state law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 91 n.14 (Stevens, J., dissenting); *Alden*, 527 U.S. at 775 n.13 (Souter, J., dissenting) (arguing that the framers "had in mind only state immunity on state-law claims, not federal questions").

*Hess* explained that "[t]he Eleventh Amendment largely shields States from suit in federal court without their consent," invoking the principle of state sovereign immunity without limitation to claims under federal law. 513 U.S. at 39. Neither that case nor any other from the Supreme Court supports the conclusion that the Port Authority—despite its not sharing the sovereign immunity of the States—might possess some *other* form of sovereign immunity that shields it from state law claims in federal court.

To be sure, while the type of claim does not alter the applicable immunity doctrine, the choice of forum might. In addition to the state sovereign immunity that the U.S. Constitution preserves, "States may also have *state-law* immunity from suit in a state forum." *PennEast*, 594 U.S. at 509 n.1 (Gorsuch, J., dissenting). Such immunity "derives from a State's 'sole control' of 'its own courts,'" which leaves the State "free to develop its own justiciability rules governing state tribunals." *Id.* (quoting *Alden*, 527 U.S. at 709). But state laws do not deprive the federal courts of subject matter jurisdiction over a lawsuit. When the parties appear "in federal court, state-law immunity is not implicated." *Id.* A federal court evaluating a state law claim will respect state law regarding when a claim accrues or the applicable statute of limitations. *Cf. Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) ("[E]ven before *Erie R. Co. v. Tompkins*, federal courts relied on statutes of limitations of the States in which they sat.") (emphasis

added). But those considerations concern the merits—whether the plaintiff has stated a claim or is entitled to relief—rather than the jurisdiction of the court.[5]

## C

The question of whether an applicable rule is jurisdictional "is not merely semantic but one of considerable practical importance for judges and litigants" because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). This case illustrates the problem.

In this case, the district court interpreted the bylaws of the Port Authority to create "jurisdictional" requirements. *Baroni*, 2023 WL 4029343, at *4. The district court concluded that Baroni's claim had not accrued—and therefore that the Port Authority had not waived its sovereign immunity—because Baroni failed to plead in his complaint that he had timely delivered the judgment of acquittal, a condition precedent to accrual. In reaching that conclusion, the district court rejected Baroni's argument that he substantially complied with the delivery requirement of the bylaws because "the

---

[5] We do not cast doubt on the judgment in *Caceres*—or in those cases decided by summary order applying that precedent—because the outcomes in those cases appear consistent with proper applications of state law: requiring compliance with the applicable statute of limitations, *Caceres*, 631 F.3d at 624 (citing N.J. Stat. § 32:1-163; N.Y. Unconsol. Law § 7107), and with the applicable notice-of-claim requirement, *Weisshaus v. Port Auth. of N.Y. & N.J.*, 497 F. App'x 102, 105 (2d Cir. 2012) (citing N.Y. Unconsol. Law § 7107; N.J. Stat. § 32:1-163); *Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J.*, 435 F. App'x 18, 25 (2d Cir. 2011) (citing N.Y. Unconsol. Law § 7107). But it was incorrect to hold that these provisions of state law limited the subject matter jurisdiction of the federal courts.

doctrine of substantial compliance is inapplicable to jurisdictional prerequisites for a waiver of sovereign immunity." *Id.* at *6 n.4.

In this way, the district court transformed a contractual dispute into a jurisdictional question to which normal contract doctrines could not apply. That was erroneous. Because the Port Authority has no sovereign immunity from suit in federal court, its bylaws do not have the power to deprive a federal court of subject matter jurisdiction. There is no reason why Baroni's contractual dispute with the Port Authority cannot be decided according to ordinary contract principles.

The district court dismissed Baroni's complaint because his "failure to plead compliance with the condition precedent to the Port Authority's contractual obligation to provide indemnification deprives the [c]ourt of jurisdiction of this dispute." *Baroni*, 2022 WL 4385585, at *5. But Baroni's possible non-compliance with a contractual precondition could not have affected the jurisdiction of the district court. Such non-compliance might excuse the Port Authority from contractual performance. But that is a merits question to be decided under state law. "[U]nder New York law, the failure of a plaintiff to comply with conditions precedent is an affirmative defense" that the Port Authority may raise. *Endovasc*, 169 F. App'x at 657. Baroni, however, did not need to plead compliance in his complaint and did not bear the burden of proving compliance. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative] defense."); *Clark v. Hanley*, 89 F.4th 78, 93-94 (2d Cir. 2023) ("The pleading requirements of the Federal Rules of Civil Procedure 'do not compel a litigant to anticipate potential affirmative defenses … and to affirmatively plead facts in avoidance of such defenses.'") (quoting

21

*Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)). Instead, the Port Authority would be required to demonstrate a lack of compliance.

The district court reallocated these burdens based on its erroneous conclusion that these contract questions implicated the subject matter jurisdiction of the federal courts. We therefore vacate the judgment and remand for further proceedings not tainted by that conclusion.

## D

The Port Authority argues that *Hess* does not require the conclusion that it lacks state sovereign immunity from suit. *See* Appellee's Br. 38-39. It points to our opinion in *Beaulieu v. Vermont*, in which we said that "there are two types of 'sovereign immunity'" that include "a particular species of sovereign immunity—Eleventh Amendment immunity from suit in federal court," on the one hand, and "the states' broader general sovereign immunity against all suits," on the other. 807 F.3d 478, 483 (2d Cir. 2015).

In *Beaulieu*, our court affirmed the judgment of dismissal based on "[a] state's sovereign immunity from private suit," which we described as "a common law doctrine historically recognized by both state and federal courts, though most clearly explicated in federal judicial precedents." *Id.* at 486 (citing *Alden*, 527 U.S. at 715-16; *Hans*, 134 U.S. at 16). The state sovereign immunity explicated in those precedents is the same sovereign immunity reflected in the Eleventh Amendment.[6] For that reason, the statement in *Beaulieu* that the

---

[6] *See Alden*, 527 U.S. at 729 ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms. That presupposition, first observed over a century ago in *Hans v. Louisiana*, has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the

Eleventh Amendment is a "particular species of sovereign immunity" is consistent with the Supreme Court's treatment of the Eleventh Amendment as describing a particular application of the broader principle of state sovereign immunity that the Constitution preserves. And *Beaulieu* expressly relied on the precedents in which the Supreme Court explained the relationship of the Eleventh Amendment to state sovereign immunity in that way. We therefore see no conflict between applicable precedent and the notion that the terms of the Eleventh Amendment describe a "species" of the "broader" state sovereign immunity under the Constitution.

*Caceres* is not reconcilable with that precedent because it drew a different distinction—between sovereign immunity from federal-law claims, on the one hand, and sovereign immunity from state-law claims, on the other—that does not treat "Eleventh Amendment immunity" as a particular application of the broader principle.

Justice Gorsuch has suggested, in a dissenting opinion in *PennEast*, that "States have two distinct federal-law immunities from suit." 594 U.S. at 509 (Gorsuch, J., dissenting). The first is the "structural immunity" that the Supreme Court has identified as the presupposition of the Constitution that a sovereign State cannot be sued by an individual without its consent. The second, which according to Justice Gorsuch "is properly termed 'Eleventh Amendment immunity,'" derives "from the text of the Eleventh Amendment." *Id.* at 510. While that text "point[s] us back to the States' structural immunity, it also provides an ironclad rule for a particular category of diversity suits" in which a State is sued by a citizen of

---

nature of sovereignty not to be amenable to the suit of an individual without its consent.") (internal quotation marks, alterations, and citations omitted) (quoting *Seminole Tribe*, 517 U.S. at 54).

another State. *Id.* Because the text provides that the federal judicial power shall not be construed to extend to such suits—and it does not authorize such an extension of the judicial power even when the State consents—Justice Gorsuch would conclude that the Eleventh Amendment categorically "eliminates federal judicial power" over that "set of cases." *Id.* In other words, the general structural immunity resembles a doctrine of personal jurisdiction because it can be waived, but Eleventh Amendment immunity resembles a limit on subject matter jurisdiction because it cannot be.[7]

There may be an academic argument for this two-immunities theory.[8] But it remains inconsistent with the applicable precedent describing a single doctrine of state sovereign immunity.[9] And—most

---

[7] *But see Oneida Indian Nation v. Phillips*, 981 F.3d 157, 179 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment) ("Nothing inherent in the nature of subject-matter jurisdiction precludes it from depending on a defendant's choice.").

[8] *See* William Baude & Stephen E. Sachs, *The Misunderstood Eleventh Amendment*, 169 U. Pa. L. Rev. 609, 612 (2021). *But see* Steven Menashi, *Article III as a Constitutional Compromise: Modern Textualism and State Sovereign Immunity*, 84 Notre Dame L. Rev. 1135, 1184 (2009) (suggesting that "the Eleventh Amendment as adopted did not purport to change the Constitution, but only to provide a rule of construction for further interpretation of Article III").

[9] *See PennEast*, 594 U.S. at 506 (majority opinion) ("[T]he other dissent offers a different theory—that even if the States consented in the plan of the Convention to the proceedings below, the Eleventh Amendment nonetheless divests federal courts of subject-matter jurisdiction over a suit filed against a State by a diverse plaintiff. But under our precedents that no party asks us to reconsider here, we have understood the Eleventh Amendment to confer a personal privilege which a State may waive at pleasure. When a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action.") (internal quotation marks, alteration, and citations omitted).

important here—it provides no justification for adhering to the very different two-immunities theory adopted in *Caceres*, which described (1) sovereign immunity from federal claims in federal court based on the Eleventh Amendment, and (2) sovereign immunity from state claims in federal court based on state law. No authority supports the proposition that state law can create a sovereign immunity that deprives the federal courts of subject matter jurisdiction. As Justice Gorsuch explained, a State might "have *state-law* immunity from suit in a state forum" because the State exercises "'sole control' of 'its own courts'" and "is free to develop its own justiciability rules governing state tribunals." *PennEast*, 594 U.S. at 509 n.1 (Gorsuch, J., dissenting) (quoting *Alden*, 527 U.S. at 740, 749). But "in federal court, state-law immunity is not implicated." *Id.*

## II

The district court denied Baroni's motion for leave to amend his complaint on the ground of futility. A district court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule reflects a "permissive standard," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), even when there are "heightened standards applicable to postjudgment motions for leave to amend," *In re Buckskin Realty, Inc.*, 845 F. App'x 68, 71 (2d Cir. 2021); *see Foman v. Davis*, 371 U.S. 178, 179-82 (1962) (explaining that, even when the plaintiff "filed motions to vacate the judgment and to amend the complaint," the "leave sought should, as the rules require, be 'freely given'"). Still, a district court may deny leave to amend based on futility. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Baroni sought to amend his complaint to allege facts showing that he complied with the condition precedent. The district court denied leave to amend on the ground that his proposed amendment was "futile" and "could not withstand a motion to dismiss." *Baroni*, 2023 WL 4029343, at \*7 (quoting *Lucente*, 310 F.3d at 258). The district court based that conclusion on the erroneous premise that compliance with the condition precedent implicated the subject matter jurisdiction of the federal courts. Because it did not, Baroni did not need to allege such compliance—which implicates an affirmative defense—in order to state a claim. Accordingly, the district court erred in concluding that the amended complaint could not withstand a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

The allegations are nevertheless relevant to the merits of Baroni's claims, so Baroni may want to include the allegations in an amended complaint. We vacate the judgment insofar as the district court denied the motion for leave to amend. We do so because the complaint—even without the amendment—was sufficient to withstand a motion to dismiss for lack of subject matter jurisdiction. We remand to allow the district court to consider whether to accept the amended complaint for further proceedings on the merits.

## CONCLUSION

We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

26

No. 23-916
*Baroni v. Port Auth. of N.Y. & N.J.*

CARNEY, *Circuit Judge*, concurring in the judgment:

I concur in the judgment reached by the Majority, and I agree with its two key rulings in support of that judgment: first, that the Supreme Court held in *Hess v. Port Authority Trans-Hudson Corporation* that the Port Authority of New York and New Jersey is not shielded in federal court by the sovereign immunity of either of its founding states, *see* 513 U.S. 30, 39, 52–53 (1994); and second, that our decision to the contrary in *Caceres v. Port Authority of New York & New Jersey*, 631 F.3d 620, 625 (2d Cir. 2011), was mistaken and must be abandoned, for, as the Majority explains, state law cannot give rise to a sovereign immunity that defeats federal court jurisdiction, *see* Maj. Op. at 18-20. In my view, these holdings suffice to decide the dispute before us.

The Majority goes further, however, pronouncing on its view of the correct understanding of the doctrine of state sovereign immunity and its relationship to the Eleventh Amendment. Respectfully, I decline to join the Majority's opinion insofar as it takes a position on these matters. The statements are dicta offered on a fraught question and better left for a case that requires they be answered. Indeed, with these statements, the Majority appears to adopt as definitive an interpretation of the Supreme Court precedents on state sovereign immunity and the Eleventh Amendment that may not be quite as certain as portrayed. The account the Majority gives is plausible and well-informed, no doubt, but as one respected authority warns as to its own summary of current state sovereign immunity doctrine,

> It is important to understand that the discussion above reflects the Court's current views on sovereign immunity. These are not immutable. They have not always been shared by a majority of the Court and they may not be shared by a majority in the future. Indeed, this is an area characterized in recent decades by five-to-four decisions and periodic overruling of what had been thought to be strong precedent.

Wright & Miller, 13 Fed. Prac. & Proc § 3524 (3d ed. 2025).

As Wright & Miller observe, the Court's various decisions addressing the Eleventh Amendment and its interplay with broader concepts of state sovereign immunity have often commanded only a narrow majority. *See, e.g., PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 509–522 (5-4); *Franchise Tax Bd. of Cal. v. Hyatt ("Hyatt")*, 587 U.S. 230, 249–261 (2019) (5-4); *Alden v. Maine*, 527 U.S. 706, 760–814 (1999) (5-4); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76–185 (1996) (5-4). And these decisions have been subject to varied interpretations by the lower courts.[1] Scholars, too, have both praised and criticized the Court's various rulings; the related debates are of long standing.[2] In

---

[1] *See Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 190 (5th Cir. 2023) (Oldham, *J.* concurring) ("Common-law sovereign immunity is different from Eleventh Amendment sovereign immunity."); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. 2021) (describing Eleventh Amendment immunity and sovereign immunity as "conceptually distinct"); *see also Galette v. NJ Transit*, 332 A.3d 776, 786 (Pa. 2025) ("State sovereign immunity is a complex doctrine that is not easily cabined into a singular concept. Many courts have suggested that the States enjoy two forms of sovereign immunity: the immunity expressed in Eleventh Amendment jurisprudence and a broader immunity that originated in the common law but transformed as applied to the States after the ratification of the Constitution, as explained by the High Court in *Hyatt* [].")，*cert. granted in part sub nom. Galette v. NJ Transit Corp.*, No. 24-1021, 2025 WL 1829160 (U.S. July 3, 2025); *Colt v. N.J. Transit Corp.*, No. 72, 2024 WL 4874365, at *2 (N.Y. Nov. 25, 2024) (4-3 majority describing *Hyatt* as holding that "all state sovereign immunity derives from the structure of the Constitution, which confirmed and retained pre-ratification notions of state sovereign immunity except as altered by the plan of convention or certain constitutional amendments" (internal quotation marks omitted)), *cert. granted in part sub nom. NJ Transit Corp. v. Colt*, No. 24-1113, 2025 WL 1829162 (U.S. July 3, 2025); *id.* at *22–24, n.13, & n.14 (Wilson, *C.J.*, concurring) (criticizing N.Y. Court of Appeals majority's view that the Supreme Court's decision in *Hyatt* eliminated distinction between Eleventh Amendment and independently existing interstate sovereign immunity and reading *Hyatt* instead to say that "interstate sovereign immunity exists independently of the Eleventh Amendment and is not defined or cabined by the jurisprudence thereunder").

[2] *See, e.g.,* Anthony J. Bellia Jr. & Bradford R. Clark, *State Sovereign Immunity and the New Purposivism*, 65 William & Mary L. Rev. 485, 488–89 (2024) ("The Constitution's precise effect on state sovereign immunity has been contested since the Founding…. The Court's new purposive approach to sovereign immunity is incompatible with the original public meaning of the Constitution."); William Baude, *Sovereign Immunity and the Constitutional Text,* 103 U. Va. L. Rev. 1, 3 (March 2017) ("[T]he new ['backdrop'] understanding explains how sovereign immunity

such a setting, unnecessary comment on only modestly briefed questions should be avoided.

Instead, the Majority, dismissing as "academic" other interpretations reflected in Supreme Court decisions and advanced by scholars over the years, offers a sweeping pronouncement that the Supreme Court "has consistently identified state sovereign immunity as a unitary concept that derives not from the Eleventh Amendment but from the constitutional structure," Maj. Op. at 17–18, 24, seeming to embrace without qualification the understanding that the Eleventh Amendment effected no change at all to a freestanding, structural immunity enjoyed by the States before the Constitution was adopted, *see id*. This leads the Majority to a firm rejection of the view expressed, for example, by Justice Gorsuch, in dissent in *PennEast,* that "States have two distinct federal-law immunities from suit." 594 U.S. at 509; *see* Maj. Op. at 23.

But on my read, the Supreme Court has no more roundly rejected a theory like that of Justice Gorsuch, who identifies in the Eleventh Amendment some independent significance, than it has fully accepted such a theory. The Court has recognized constitutional structure as *a* source of a state's sovereign immunity, it appears; it is less

_____

fits into the constitutional text and also makes sense of the Court's sovereign immunity cases— at least for now." (footnote omitted)); David A. Strauss, *The Supreme Court 2014 Term—Foreword: Does the Constitution Mean What it Says?*, 129 Harv. L. Rev. 2, 51 (2015) ("Not surprisingly, there has been a great deal of controversy about both the historical claims about sovereign immunity and the present-day significance of those claims, even assuming they are correct." (footnote omitted)); John F. Manning, *The Eleventh Amendment and the Reading of Precise Constitutional Texts*, 113 Yale L.J. 1663, 1670–71 (2004) (noting the "continued application of strong purposivism to clarify and extend state sovereign immunity creates an apparent methodological incongruity that requires explanation" and arguing that the "Court should perhaps not be so quick to dismiss the possibility that the Eleventh Amendment carries a negative implication"); Vicki C. Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity*, 98 Yale L.J. 1, 4 (1988) ("The Eleventh Amendment, and the doctrine of state constitutional immunity from suit in federal courts which it represents, has long been perceived as a doctrinal abyss, replete with inconsistencies borne of pragmatic adjustments to the principle for which it supposedly stands.").

apparent that its decisions have established for all time that structure is *the sole* source of that immunity or that the Court has permanently foreclosed all other expressions of that immunity. Rather, even a superficial review of the caselaw in this field reveals other, quite different—and non-"unitary"—understandings of the relationship between the Eleventh Amendment and state sovereign immunity. *See, e.g., Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 260 (2011) (in the context of state sovereign immunity claim, observing that limits on the federal government's power can stem from two distinct sources: either a "textual provision or [a] structural premise of the Constitution"); *id.* at 253 ("States have retained their traditional immunity from suit" conferred by constitutional structure, "except as altered by the plan of the Convention or certain constitutional amendments."); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002) (stating that "the Eleventh Amendment does not define the scope of the States' sovereign immunity[;] it is . . . one particular exemplification of that immunity"). The variability in these decisions reinforces my view that our commentary in this case should be restricted to what is necessary to explain our decision.

For similar reasons, I also part with the Majority insofar as it concludes that our decision in *Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015), reflects an endorsement of the unitary, structural concept of sovereign immunity that the Majority promotes. It describes *Beaulieu* as having identified the "state sovereign immunity explicated" in *Alden*, 527 U.S. at 715–16, and *Hans v. Louisiana*, 134 U.S. 1, 16 (1890), as "the same sovereign immunity reflected in the Eleventh Amendment." Maj. Op. at 22. But in *Beaulieu*, we commented that the "concept of state sovereign immunity encompasses different species of immunity," of which the Eleventh Amendment "identifies a single species . . . ." 807 F.3d at 487. "Accordingly," we said, "there are two types of 'sovereign immunity' at issue here." *Id.* These comments strike me as potentially consistent with both a unitary understanding of sovereign immunity *and* with one that finds some

4

separate force in the Eleventh Amendment. *See Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016) (characterizing *Beaulieu* as "distinguishing between Eleventh Amendment immunity and broader state sovereign immunity under Vermont law"), *aff'd*, 583 U.S. 220 (2018); *Church v. Missouri*, 913 F.3d 736, 742–43 (8th Cir. 2019) (same).

But again, we have no need to eliminate any uncertainty about *Beaulieu* now. Its description of sovereign immunity stands well apart from the mistaken understanding relied on in *Caceres* and advanced here by the Port Authority, and it need not be further scrutinized today. The Supreme Court has held the Port Authority in specific not to be an arm of either of its founding States and not to be entitled by the doctrine of state sovereign immunity to dismissal for want of jurisdiction in federal court. *See Hess*, 513 U.S. at 39. That alone, and sufficiently, requires vacatur and remand.

## CONCLUSION

For the foregoing reasons, I respectfully decline to join the Majority's opinion. I concur, however, in the court's judgment **VACATING** the judgment of the District Court and **REMANDING** the matter for further proceedings consistent with our decision.

5